**STATE of Iowa, Appellee,**

v.

**Cory Alan TESCH, Appellant.**

No. 04–0955.

Supreme Court of Iowa.

Sept. 30, 2005.

---

Linda Del Gallo, State Appellate Defender, and Martha J. Lucey, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, and Jeffrey H. Greve, County Attorney, for appellee.

TERNUS, Justice.

Appellant, Cory Alan Tesch, appeals following his waiver from juvenile court and subsequent conviction and sentence on the charge of criminal mischief in the second degree in violation of Iowa Code sections 716.1 and 716.4 (2001). He claims the juvenile court abused its discretion in waiving its jurisdiction over him so that he could be tried as an adult in district court. He also claims his trial counsel rendered ineffective assistance by failing to object to victim impact statements given by persons whom Tesch claims were not "victims" under Iowa Code section 915.10(3). We affirm.

I. *Factual Background.*

On November 25, 2002, fifteen-year-old Tesch and two friends destroyed traffic warning signs, lights and barricades protecting a recently dug ten-foot-deep and twenty-five-foot-wide trench across both lanes of a hard-surface county road in Worth County. The juveniles were methodical in their efforts to destroy all warnings that might alert motorists traveling on this high-speed road of the impending danger. The defendant and his cohorts knocked over an eight-foot wooden barricade placed a mile south of the construction site that blocked the north-bound lane. Not only did they knock down the barricade, they also used a baseball bat to break the lights on the barrier, and they removed flags from the barricade. A second barricade placed a mile north of the trench blocking south-bound traffic was also knocked over and similarly vandalized by the juveniles. Immediately north and south of the trench were additional eight-foot barricades with an orange construction fence attached at both ends to completely block both lanes of traffic. The south barricade and fence were totally removed and put into the ditch by Tesch and his buddies. The north barricade had been moved but was not completely off the road; the fence had been cut with a knife.

In the early morning hours of November 26, 2002, a thirty-eight-year-old father of two, Randy Severson, was driving north on the road in question when he came upon the unmarked construction site and hole. Unaware of the danger, he drove into the trench. A county deputy discovered Severson's vehicle at approximately 7:00 a.m.

that morning. Severson was severely injured, and was transported to Rochester in critical condition. His injuries included a fracture of the spine at the base of his skull requiring surgical intervention; a dislocated hip with significant breakage in the hip socket such that hip-replacement surgery would eventually be required; and pneumonia caused by Severson's breathing in debris from the ditch. Several weeks after the accident, Severson was still on a respirator, could not talk, could not move one of his legs, had only partial movement in his other leg, and was battling blood clots in his arms and legs. The extent of his recovery is not shown in the record, but clearly Severson sustained injuries that will have a life-long impact.

## II. *Underlying Proceedings.*

A. *Charges.* On December 23, 2002, the State filed a delinquency petition charging Tesch with the delinquent act of criminal mischief in the first degree. The State subsequently filed an application for waiver of juvenile court jurisdiction. After receiving evidence from the State and Tesch, the juvenile court granted the State's application. The State then filed a trial information charging Tesch with criminal mischief in the second degree and assault causing injury. The court eventually dismissed these charges without prejudice.

On August 18, 2003, the State filed a second delinquency petition alleging Tesch had committed the delinquent acts of assault causing serious injury and assault while participating in a felony. This petition was later amended to add a charge of criminal mischief in the second degree. Again, the State filed an application to waive juvenile court jurisdiction, and a second hearing was held.

B. *Waiver proceeding and ruling.* Evidence at the waiver hearing showed that although Tesch had never been referred to juvenile court services prior to this incident, he had been a problem in the community in the previous year. Juvenile court officer (JCO) David Carlson learned from the local police chief that the chief had "seen" Tesch for driving without a license, disruptive behavior in a restaurant, tipping over a port-a-pot, spraying stop signs, damaging a vehicle, breaking holiday lights, vandalizing a school bus, and stealing pop cans.

According to a report from a school psychologist who had worked with Tesch for many years, Tesch was not successful academically and had had ongoing behavioral problems for many years that included "oppositional behavior with teachers, lack of respect for authority, and refusal to do school work." These problems continued during the 2002–2003 school year, when Tesch was disciplined for multiple instances of class disruption, theft, and disrespect to staff, as well as smoking and shooting an air pistol at a school night light. The school psychologist made the following pertinent observations concerning Tesch's response to discipline:

> [Cory] has had the attitude that he can do as he pleases in school.... The consequences that have been administered by the school for negative behaviors have in my opinion made no impression on Cory.... In my opinion, if Cory is not given a serious consequence for his suspected criminal mischief activities, he will come to believe that it was "no big deal" and his behavior and conduct problems will continue or escalate. My concern here is for the safety of the community should a minimal consequence be administered by the court.

The school psychologist also shared his observations made during a disciplinary hearing conducted by the school in connection with Tesch's school infractions. The psychologist said:

From questioning Cory, his mother, a mentor, and school personnel, it was concluded that Cory was completely aware of and understood the consequences of his actions with respect to recent criminal activity that he has admitted to and further, that he does not possess any disability that would impair his ability to control the behaviors in question. Cory was for the most part very unresponsive and expressionless during this process and made no expressions of remorse.

The JCO reported on his investigation, as well as his conclusions concerning Tesch's culpability. The JCO believed Tesch and his friends knew the barricades protected motorists traveling on this high-speed road from driving into a large trench. Moreover, "because of the time it took to do the criminal mischief," the JCO thought the "three offenders all had opportunity to consider what they were doing and change their minds." The JCO testified that although the services available to Tesch in the juvenile system and the adult criminal system were very similar, he was convinced Tesch's prospects for rehabilitation in the juvenile system were minimal due to the limited time the juvenile court would have jurisdiction before Tesch turned eighteen. According to the JCO, under adult jurisdiction, Tesch could receive lengthier supervision, and if he became noncompliant, he could be sentenced to confinement. The JCO believed Tesch's compliance would be more forthcoming if Tesch knew he faced prison rather than the consequences available through the juvenile system. For these reasons, the JCO concluded adjudication in the district court was also in the best interest of the community because it would offer a better opportunity for Tesch to make more positive choices for a longer period of time, providing more assurance to the community that Tesch would be law abiding in the future.

The defendant's current teacher was also called to testify. She informed the court that Tesch had been transferred to a learning center in January 2003. Initially, Tesch continued to do poorly academically, but since August 2003, his grades had improved. While at the learning center, the defendant's attendance had been excellent, and other than impulsiveness in the classroom, Tesch had not had any significant behavioral problems. The defendant's teacher opined that Tesch's efforts to change were sincere, and that juvenile court supervision was an appropriate option for Tesch.

The defendant also introduced a report from licensed psychologist Dr. Amy Timm, whose assessment was for the most part consistent with the State's position. Her tests revealed that Tesch had a below-average IQ, low self-worth, low aspirations, and difficulty with authority. In contrast to the observations of the State's witnesses, however, Dr. Timm reported that Tesch had engaged in the delinquent acts out of boredom, was unaware that anyone would be hurt by his actions, and now felt "really, really, bad." She also noted that since being charged as a result of the incident in question, Tesch had remained law abiding and had adjusted well to his new school environment. Her final diagnosis was oppositional defiant disorder, attention deficit hyperactivity disorder—predominate impulsive type, and borderline intellectual functioning. She concluded:

> Cory has the cognitive ability to understand that his behavior was illegal and would have consequences. However, his high level of impulsiveness, compliance to deviant peers, strong need for acceptance and low self-esteem make it likely that he will continue to struggle

with such behavior. This will continue to occur in new situations where delinquent peers are present unless attempts are made. Given the lack of previous interventions and Cory's presenting concerns, some type of rehabilitation or counseling would be recommended. His prognosis is likely marginal to fair if a comprehensive treatment plan is implemented appropriately. . . .

Dr. Timm recommended that Tesch receive individual counseling and therapy, become involved in extracurricular activities, participate in family therapy, be offered services through the school, become involved with a male mentor or "Big Brother," and continue to abstain from illegal substances.

A written report prepared by Dr. Lorne Johnson, a licensed psychologist, was also presented. Dr. Johnson had reviewed information concerning Tesch and had interviewed and evaluated the juvenile in October 2003. He reported the defendant stated he "feels bad and that he was not planning to hurt or kill anybody" when he and his friends vandalized the barricades. Tesch also provided the psychologist with an apology letter he had written to Severson, but had not mailed on the advice of his legal counsel. Dr. Johnson's assessment of Tesch was similar to that of Dr. Timm, except Dr. Johnson concluded Tesch's oppositional and defiant behavior had reduced considerably since Dr. Timm's assessment earlier in 2003. He also believed that Tesch did not suffer from a conduct disorder such that he would continue to demonstrate poor conscience and disregard for social convention. Dr. Johnson concluded that given these facts and Tesch's very limited intellectual functioning, it would be inappropriate to classify or try Tesch as an adult. In view of Tesch's recent progress, Dr. Johnson thought Tesch could be successful in a juvenile program.

On December 10, 2003, the juvenile court granted the State's second motion to waive jurisdiction to adult court. After thoroughly reviewing the evidence, the court adopted the position of the JCO that Tesch's and the community's needs would not be served if jurisdiction was left with the juvenile court. The court explained:

The Court has struggled to answer the question: whether Cory's apparent improvements were a desire to "look good" for impending court action or were a genuine effort to make real change, which would continue if consequences were few and limited? The prospects for rehabilitation for this child should be maximized for his benefit and to provide the community maximum protection from further violation.

Weighing the most appropriate and respective prospects for rehabilitation, the Court **FINDS** that the prospects for rehabilitating Cory Tesch if this Court retain[s] jurisdiction are limited and that it is in his best interests and the interest of the community that jurisdiction be waived for prosecution as an adult. Cory is nearly [the] age of majority. Placement options are not available to juvenile court after age 18 even though it may continue its supervision. In the adult system services to rehabilitate, consequences for non-compliance, and the time for those consequences are greatly expanded. The intentional nature of this act, the severe nature of the act, and the consequences, when coupled with the Juvenile Court Officer's strong recommendation, weigh heavily in favor of waiver of jurisdiction.

C. *Trial and judgment.* After its waiver application was granted, the State filed a trial information charging Tesch with assault while participating in a felony, assault causing serious injury, and criminal

mischief in the second degree. The defendant waived a jury trial, and proceeded to trial on the minutes on the criminal mischief charge. (The court subsequently dismissed the two assault charges at the State's request.) Criminal mischief is defined as "[a]ny damage, defacing, alteration, or destruction of tangible property ... when done intentionally by one who has no right to so act." Iowa Code § 716.1. Criminal mischief is criminal mischief in the second degree "if the cost of replacing, repairing, or restoring the property ... exceeds one thousand dollars but does not exceed ten thousand dollars." Id. § 716.4. Second-degree criminal mischief is a class "D" felony. Id.

The trial court found that Tesch had "destroyed traffic warning signs, lights, and barricades protecting a road ditch." The court also observed that "[a]s a direct result of the removal and destruction of the traffic warning devices, a passing motorist drove into the ditch and was seriously injured." The court found the cost of repairing the damaged warning devices was $1284.84. The court held the defendant was guilty of criminal mischief in the second degree and set sentencing for a later date.

D. *Sentencing*. At the subsequent sentencing hearing, Randy Severson, the injured motorist, was allowed to give an oral victim impact statement. A statement given by Severson's wife at the sentencing of one of Tesch's accomplices was also made a part of the record.

The court sentenced Tesch to an indeterminate five-year prison term, suspended the sentence, and placed Tesch on probation. Tesch was also required to pay a $3000 fine, maintain employment, and obtain mental health counseling. The defendant appealed, challenging the juvenile court's waiver order and challenging the Seversons' status as "victims" under the law allowing victims to give impact statements at a defendant's sentencing.

III. *Waiver Ruling.*

■ A. *Scope of review.* We generally review court rulings in juvenile proceedings de novo. *See In re Interest of T.V.,* 563 N.W.2d 612, 613 (Iowa 1997); *In re Interest of Henderson,* 199 N.W.2d 111, 116 (Iowa 1972) (stating because juvenile proceedings are neither criminal nor civil, they are special proceedings subject to de novo review). Nonetheless, where the legislature has clearly vested the juvenile court with discretion in a specific area, we review the court's decision on that matter for an abuse of discretion. *See In re Interest of Matzen,* 305 N.W.2d 479, 482 (Iowa 1981) (considering juvenile court's statutory discretion to enter a consent decree). Our review remains de novo only in the sense that we examine "all the evidence to determine whether the court abused that discretion." *State v. Greiman,* 344 N.W.2d 249, 251 (Iowa 1984) (reviewing juvenile court's waiver ruling).

■ The waiver statute, section 232.45, vests discretion in the juvenile court to decide whether a waiver of juvenile court jurisdiction is warranted. *In re Interest of C.W.R.,* 518 N.W.2d 780, 783 (Iowa 1994). Therefore, our review is for an abuse of discretion. *See id.; Greiman,* 344 N.W.2d at 251. An abuse of discretion occurs when the court's decision is based on grounds or reasons that are clearly untenable or unreasonable. *State v. Loyd,* 530 N.W.2d 708, 713 (Iowa 1995). Under a purely de novo review, we "give weight to the factual determinations of the juvenile court, especially when considering the credibility of witnesses, [but] we are not bound by them." *In re Interest of T.A.L.,* 505 N.W.2d 480, 482 (Iowa 1993). We will accord the same deference to the juvenile

court's fact findings under our abuse-of-discretion standard.

■ **B.** *Statutory law governing waivers to adult court.* The juvenile court may waive its jurisdiction only if the child is at least fourteen years old and "there is probable cause to believe the child has committed a delinquent act." Iowa Code § 232.45(6)(*a*), (*b*). These facts are not contested; it is a third requirement that is at issue here. Before waiving jurisdiction, the juvenile court must determine

> that the state has established there are not reasonable prospects for rehabilitating the child if the juvenile court retains jurisdiction over the child and the child is adjudicated to have committed the delinquent act, and that waiver of the court's jurisdiction over the child for the alleged commission of the public offense would be in the best interests of the child and the community.

*Id* § 232.45(6)(*c*). Tesch challenges the juvenile court's conclusion that there are not reasonable prospects for rehabilitation in juvenile court and that waiver is in the best interests of Tesch and the community.

Section 232.45(8) contains a nonexhaustive list of factors that the court must consider in making the determination required by section 232.45(6)(*c*). Those factors include:

> *a.* The nature of the alleged delinquent act and the circumstances under which it was committed.

> *b.* The nature and extent of the child's prior contacts with juvenile authorities, including past efforts of such authorities to treat and rehabilitate the child and the response to such efforts.

> *c.* The programs, facilities and personnel available to the juvenile court for rehabilitation and treatment of the child, and the programs, facilities and personnel which would be available to the court that would have jurisdiction in the event the juvenile court waives its jurisdiction so that the child can be prosecuted as an adult.

Iowa Code § 232.45(8). With this statutory framework in mind, we now consider the defendant's challenge to the juvenile court's waiver decision.

C. *Discussion.* Tesch criticizes the juvenile court's ruling for several reasons. In general, Tesch objects to the weight the court placed on some factors as opposed to others and to the court's acceptance of the State's evidence over his own on several issues. Specifically, he contends he did not intend to injure anyone by his delinquent act and is being punished only because the worst possible collateral outcome was realized. He also disputes the juvenile court's finding that he had no remorse. In addition, Tesch challenges the court's conclusion that the options and consequences in juvenile court were inadequate in view of his compliant and law-abiding behavior since being charged and in view of the fact that the services available to him in juvenile court and adult court were nearly identical. He claims there is no basis to find that he is a danger to the public, such that the community's best interests require waiver. Finally, he argues the only support in the record for the court's concern about his compliance if juvenile court jurisdiction were retained was the JCO's "unsubstantiated opinion." [1]

In considering Tesch's arguments, we first observe that it is not unusual for the

**1.** Tesch also complains of a comment made by the juvenile court in its ruling on the State's first waiver motion that the court *"must* give 'considerable' weight to the opinion of the Juvenile Court Officer." (Emphasis added.) We do not address this complaint because the first waiver ruling is not before us for review.

juvenile court to be confronted with contradictory evidence regarding the factors relevant to the court's decision. *See, e.g., Greiman,* 344 N.W.2d at 251. It is the essence of the court's duty to evaluate conflicting evidence in making the judgment whether the juvenile will be better off in adult court. In the present case, there was certainly evidence from Tesch's witnesses that would have supported a decision by the juvenile court to retain jurisdiction. On the other hand, the court was not unreasonable in being skeptical of the depth and genuineness of Tesch's apparent rehabilitation during the time the charges were pending. The school psychologist stated that Tesch showed no remorse at a January 2003 disciplinary hearing at school. The court could reasonably conclude that his subsequent expressions of remorse were motivated by his desire to avoid prosecution as an adult. Importantly, the juvenile court had an opportunity to observe Tesch and assess his credibility, so we place weight on the court's skepticism of Tesch's recent reformation.

The evidence of the defendant's intent was also conflicting. Although his expert, Dr. Timm, opined that Tesch was unaware that anyone would be hurt by his actions, she also stated that he had "the cognitive ability to understand that his behavior was illegal and would have consequences." Dr. Johnson thought Tesch did not intend to hurt anyone, but the JCO stated that given the pervasiveness of the vandalism, covering a two-mile stretch of the highway, the juveniles had plenty of time to realize the serious consequences that could result from their conduct. The JCO informed the court that Tesch and his accomplices actually saw the trench, and he concluded they should have recognized the potential danger it posed to motorists traveling at fifty-five miles per hour. Moreover, the school psychologist stated Tesch did "not possess any disability that would impair

his ability to control the behaviors in question."

As for the prospects of rehabilitation, the school psychologist, who had known and worked with Tesch the longest, expressed serious concern that Tesch would not learn from this incident if he were given minimal consequences. Although the defendant's witnesses documented his recent improvement, the court could have reasonably questioned whether this good behavior would continue once the specter of adult court was removed. The fact that the services available to Tesch would have been the same in either court is not determinative. Although the availability of services is one factor to consider, the juvenile court is not limited to that circumstance in comparing the prospects for rehabilitation. *See In re Interest of J.J.A.,* 580 N.W.2d 731, 741 (Iowa 1998) (stating section 232.45 " 'confers very broad discretion upon the court to consider such factors as it deems relevant in determining whether it ought to waive jurisdiction in a particular case' " (citation omitted)). The court's conclusion that Tesch's long-term rehabilitation would be influenced by the consequences he faced if he were noncompliant was reasonable and supported by the record. In this regard, we note the JCO was not the only witness who supported waiver. Although the school psychologist did not expressly address the waiver issue, that witness clearly believed if Tesch were given a minimal penalty, "his behavior and conduct problems will continue or escalate." He also expressed concern for the safety of the community if Tesch were not given significant consequences for his delinquent act. The JCO expressed similar views, stating "the best interest of the community would be served by a more significant and appropriate time period of supervision" than that offered in juvenile court. Again, the court had the opportunity to see and

hear Tesch testify and having that opportunity, apparently believed the evaluations and the conclusions of the JCO and school psychologist were more reliable.

In summary, we find no merit in the defendant's arguments challenging the juvenile court's discretion. The court's decision was supported by the evidence, notwithstanding the contrary opinions offered by Tesch's witnesses. We think the basis for the court's decision was valid, sound and reasonable. Therefore, we hold the juvenile court did not abuse its discretion in waiving jurisdiction to the district court.

## IV. Victim Impact Statements.

A. *Factual background.* The injured motorist, Randy Severson, was permitted to speak at Tesch's sentencing hearing. In a brief statement to the court, he stressed the severe nature of his injuries and that he could have died. He advised the court that he had seen no remorse from Tesch, stating: "In fact the kids walk by me and giggle, chuckle." He asked the court to sentence Tesch to the maximum time allowed because Tesch intended to injure someone. In addition, a statement made by Severson's wife at the sentencing of one of the other juveniles was introduced at the defendant's sentencing hearing. Tesch claims that his counsel was ineffective in failing to object to the Seversons' statements on the basis the Seversons were not "victims" within the meaning of Iowa Code section 915.10.

B. *Elements of ineffective-assistance-of-counsel claim.* To prevail on an ineffective-assistance-of-counsel claim, Tesch must prove two things: (1) trial counsel failed to perform an essential duty, and (2) prejudice resulted from that failure. *State v. McCoy,* 692 N.W.2d 6, 14 (Iowa 2005). An inability to prove "either the duty or prejudice prongs defeats the claim of ineffective assistance of counsel."

*State v. Scalise,* 660 N.W.2d 58, 62 (Iowa 2003). Ordinarily, such claims are preserved for a possible postconviction relief action unless it can be determined as a matter of law on appeal that the defendant cannot prove either or both elements of the claim. *See State v. Graves,* 668 N.W.2d 860, 869 (Iowa 2003).

C. *Duty element.* "Failing to perform an essential duty means counsel's performance fell outside the normal range of competency." *Scalise,* 660 N.W.2d at 61–62. If the underlying claim—here, defense counsel's failure to object to the victim statements—has no merit, counsel will be held to have acted within the normal range of competency. *See State v. Dalton,* 674 N.W.2d 111, 120 (Iowa 2004). Thus, we first examine whether the Seversons' statements were properly admitted at Tesch's sentencing hearing.

Iowa Code section 915.21 provides that "[a] victim may present a victim impact statement to the court" using one or more specified methods. A "victim" is defined in the statute as

> a person who has suffered physical, emotional, or financial harm as the result of a public offense or a delinquent act, other than a simple misdemeanor, committed in this state. *"Victim"* also includes the immediate family members of a victim who died or was rendered incompetent as a result of the offense or who was under eighteen years of age at the time of the offense.

Iowa Code § 915.10(3). Tesch maintains the Seversons do not fall within this definition. He asserts that because the essence of his crime is the damage or destruction of another's property, the only victim of his criminal mischief was the county who owned the property damaged and destroyed by the juvenile offenders. The State responds that Randy Severson was

indeed "a person who has suffered physical, emotional [and] financial harm as the result of [Tesch's criminal mischief]." *Id.*

In considering this issue, we are guided by well-established principles of statutory interpretation:

"When the text of a statute is plain and its meaning clear, the court should not search for meaning beyond the express terms of the statute. . . ." However, where the language of a statute is ambiguous, so that reasonable minds would differ on the meaning, we turn to our rules of interpretation. The polestar of statutory interpretation is to give effect to the legislative intent of a statute. We "consider the objects sought to be accomplished and the evils and mischiefs sought to be remedied, seeking a result that will advance, rather than defeat, the statute's purpose."

Our goal is to look at what the legislature said, not what it might or should have said. . . . [W]e will not construe a statute in a way [that] creates an impractical or absurd result, nor will we speculate as to the probable legislative intent beyond what the language clearly states.

*State v. Schultz,* 604 N.W.2d 60, 62 (Iowa 1999) (citations omitted). Finally, when the legislature has not defined a term, we look to the common meaning of that term in interpreting the statute. *Mason v. Vision Iowa Bd.,* 700 N.W.2d 349, 354 (Iowa 2005). The dictionary provides a ready source for the common meaning of a word or phrase. *Id.*

Returning to the statute at issue here, we first consider whether either of the Seversons is "a person who has suffered physical, emotional, or financial harm as the result of a public offense or a delinquent act." Iowa Code § 915.10(3). There seems little doubt that Randy Severson suffered physical, emotional, and financial harm from the criminal mischief perpetrated by Tesch and his accomplices. Similarly, Severson's wife suffered emotional harm due to the injuries to her husband. The issue, then, is whether the harm sustained by these individuals was "as a result of" Tesch's criminal mischief. As noted above, the defendant claims only the person against whom the crime was directed falls within the statutory definition of "victim."

The dictionary defines "result" as "anything that comes about as a consequence or outcome of some action, process, etc." *Webster's New World College Dictionary* 1223 (4th ed. 2001). If one applies the common meaning of the phrase "as a result of," it seems clear that Randy Severson is a "victim": he suffered injuries as a consequence of a public offense, the criminal mischief activities of the defendant and his cohorts. Although the vandals may not have intended to injure Severson, his injuries were certainly the direct outcome of their actions.

Adoption of the defendant's interpretation of the statute would impose an artificial limitation on the definition of "victim" at odds not only with the language of the statute, but also with the underlying legislative intent. The purpose of this statute is "to assure the fair and compassionate treatment of victims . . . of crimes," to reaffirm "the criminal justice system's fundamental responsibility to victims . . . to ensure their equitable and fair treatment," and to "assist [victims] in overcoming emotional and economic hardships resulting from criminal acts." 1986 Iowa Acts ch. 1178, § 1. Limiting victim impact statements in the prosecution of property crimes to the property owners would exclude other persons like Randy Severson suffering harm as a direct consequence of the offense, and would, therefore, be inconsistent with the legislative goal. *See*

*Schultz,* 604 N.W.2d at 62 (stating court seeks " 'a result that will advance, rather than defeat, the statute's purpose' " (citation omitted)). It would also impose a limitation not supported by the language chosen by the legislature. *See State v. Wilt,* 333 N.W.2d 457, 461 (Iowa 1983) ("We may not qualify a statute or change its terms under the guise of judicial construction."). We note other states have adopted a more restricted definition of "victim," expressly confining "victims" to those who have suffered injury " 'as a result of a crime committed *against that person.*' " *State v. Hill,* 155 N.J. 270, 714 A.2d 311, 312 (1998) (per curiam) (quoting N.J. Stat. Ann. § 2C:43–3e (emphasis added)). Our legislature used broad language in defining "victim," which has led this court in the past to give an expansive interpretation to the statute. *See State v. Sailer,* 587 N.W.2d 756, 764 (Iowa 1998) (interpreting word "offense" in statutory definition of "victim" broadly to effectuate purpose of statute). We take the same approach here, and hold Severson falls within the statutory definition of "victim" under section 915.10(3).

We now address whether Severson's wife is in a similar position. The answer to this question can be found in this court's decision in *State v. Sumpter,* 438 N.W.2d 6 (Iowa 1989). In *Sumpter,* victim impact statements from the aunts and uncle of a murder victim were included in the presentence investigation report considered by the court in sentencing the murderer. 438 N.W.2d at 7. The defendant challenged the propriety of the court's consideration of these statements, claiming the aunts and uncle of the deceased were not "victims" under the predecessor statute to section 915.10(3), which contained essentially an identical definition of "victim" as that found in the current statute. *Id.* This court held the first sentence of the statute included only the murder victim, not others who had suffered harm because of her death. *Id.* at 8. We explained:

> If we accept the State's reading of the "victim" definition to allow the first sentence to permit any person, not necessarily the actual victim, who suffers physical or emotional harm by a public offense to file a victim impact statement, the second sentence (the "immediate family" sentence) will be rendered superfluous, because such persons would already have been included in the first sentence.

*Id.* Applying the holding of *Sumpter* here, we conclude Severson's wife was not a "victim" under the first sentence of the statutory definition because her harm flowed from the injuries suffered by her husband as a result of the offense and not directly from the criminal acts.

The only other possible basis for admission of Mrs. Severson's statement is the second sentence of the "victim" definition that includes, under certain circumstances, "the immediate family members of the victim." *See* Iowa Code § 915.10(3). Those required circumstances—the minority, incompetency, or death of the victim—are not present here. Severson was not a minor, he did not die, and he was able to give a victim impact statement himself. Therefore, Mrs. Severson's statement should not have been allowed at Tesch's sentencing hearing.

In summary, we hold trial counsel did not fail to perform an essential duty when counsel did not object to the oral statement of Severson. On the other hand, counsel would have had a valid objection to the submission of Mrs. Severson's written statement. Under our *Sumpter* decision, which was handed down many years prior to this matter, she was clearly not a victim as that term is defined in chapter 915. Therefore, defense counsel failed to per-

form an essential duty, unless counsel had a strategic or tactical reason to allow the sentencing judge to consider Mrs. Severson's statement.[2] *Cf. Graves,* 668 N.W.2d at 870 ("If it is determined that defense counsel failed to raise a meritorious issue, we must then consider whether an attorney performing within the range of normal competency would have made an objection and/or requested a mistrial."). Ordinarily, we would preserve a defendant's ineffective-assistance claim to allow counsel to explain why he or she did not make a valid objection. *Id.* We need not do so here, however, because we believe Tesch has failed as a matter of law to prove the prejudice prong of his claim.

■■■■ D. *Discussion of prejudice element.* To prevail on the prejudice prong of an ineffective-assistance claim, "the defendant must 'show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Taylor,* 689 N.W.2d 116, 134 (Iowa 2004) (citation omitted). Tesch claims he was prejudiced here because the Seversons' statements provided facts that were outside the record in the criminal case. Of course, we need not consider the effect of Severson's statement because we have held it was properly admitted. *See Sailer,* 587 N.W.2d at 764 (holding victim of crime may "fully detail the impact of the offense"). As for his wife's statement, it contained the following information:

> We've done a lot of talking about this for a long time and I don't think anyone in our family knows what the right punishment would be. I hope that whatever the court decides that it will be a supervision strong enough that something like this doesn't happen to someone else. We don't wish anything bad happens to you. I'd like somehow for some good to come out of this somewhere, but if the court could decide that there could be some stronger supervision than just simple probation, maybe some counseling to realize that you just shouldn't feel bad for getting caught but feel bad for what you did.
>
> I think Randy and I will be satisfied with whatever the court decides and I think the whole family will be satisfied with whatever the court decides, but we need to make sure that somehow some good can come out of this.

We do not think this statement told the court anything that it did not already know. Mrs. Severson basically said that whatever sentence the court handed down would be satisfactory to her family, but she wanted the defendant to receive counseling in addition to "simple probation." The sentencing judge made no mention of the Seversons' wishes in pronouncing sentence.

The inadmissible victim impact statement in this case is much less antagonistic to the defendant than were the statements erroneously admitted in *Sumpter,* where we held the defendant suffered no prejudice. In *Sumpter,* the aunts and uncle of the murder victim were hostile and bitter and expressed a strong desire for the ultimate retribution. 438 N.W.2d at 9. We concluded, however, that the statements told the judge little, if anything, that was not already apparent and did not contain allegations of unproven crimes or other facts outside the record. *Id.; cf. State v.*

---

**2.** Because Mrs. Severson's statement was rather mild, focused on the defendant's need for counseling, and indicated "the whole family [would] be satisfied with whatever the court decide[d]," defense counsel may have considered the statement beneficial because the victim's family was not demanding imprisonment. Thus, counsel's failure to object may have been a tactical decision.

*Matheson,* 684 N.W.2d 243, 244 (Iowa 2004) (holding where impermissible victim impact statements were submitted containing information regarding unrelated crimes committed in another state, error was not harmless). Because the victim impact statements did not contain prejudicial information such as unproven crimes or other facts outside the record, we held there was no prejudice. *Sumpter,* 438 N.W.2d at 9.

Although the prejudice analysis in *Sumpter* was not made in the context of an ineffective-assistance-of-counsel claim, we think the same conclusion—that prejudice is lacking—is warranted here. Mrs. Severson's statement did not inform the court of unproven crimes, nor did it bring in facts outside the record. Mrs. Severson simply informed the court of her desire that the defendant receive counseling if he were placed on probation. Every expert who had evaluated Tesch recommended the same thing. Therefore, it is unlikely that Mrs. Severson's statement affected the outcome of the sentencing proceeding. Accordingly, Tesch has failed as a matter of law to prove the prejudice prong of his ineffective-assistance-of-counsel claim.

### V. *Conclusion.*

The juvenile court did not abuse its discretion in waiving jurisdiction. It was reasonable for the court to believe that only the consequences available in district court would be strong enough to keep Tesch on the road to long-lasting rehabilitation.

Trial counsel had no basis to object to the sentencing court's receipt of Severson's victim impact statement because Severson was a "victim" as that term is defined in Iowa Code section 915.10(3). Conversely, counsel had a meritorious objection to the submission of Mrs. Severson's impact statement because she was not within the statutory definition of "vic-

tim." The introduction of her statement was not, however, prejudicial. Therefore, the defendant failed to prove he received ineffective assistance from his trial counsel based on counsel's failure to object to Mrs. Severson's statement.

We affirm the district court's judgment of conviction and sentence.

**AFFIRMED.**