**IN THE COURT OF APPEALS OF IOWA**

No. 22-0607
Filed July 20, 2022

**IN THE INTEREST OF C.S.,**
**Minor Child**

**J.S., Intervenor,**
      Appellant.
_____


Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.


The maternal grandfather appeals the district court decision denying his petition to remove the Iowa Department of Human Services as the child's guardian. **AFFIRMED.**


Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Julie Gunderson Trachta, Cedar Rapids, attorney and guardian ad litem for minor child.


Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

The maternal grandfather, J.S., appeals the juvenile court decision denying his petition to remove the Iowa Department of Human Services (DHS) as the legal guardian of C.S. following the termination of the parental rights of the child's parents. DHS did not act unreasonably or irresponsibly, and the maternal grandfather has not shown DHS failed to act in the child's best interests by placing the child with the maternal grandmother. We affirm the decision of the juvenile court.

## I.      Background Facts & Proceedings

B.S. is the mother of C.S., who was born in 2017. On December 18, 2019, the child was adjudicated to be in need of assistance (CINA) due to the mother's use of methamphetamine. The CINA adjudication order noted the child had been voluntarily placed with J.S., the maternal grandfather.[1] The disposition order formally placed custody of the child with DHS for the purpose of relative care. The child continued in the grandfather's care throughout the CINA proceedings.

B.S.'s parents are divorced. The maternal grandmother is remarried and lives in Texas. After the child's birth, the mother and the child resided with the maternal grandmother. The maternal grandmother also provided care for the child while the mother was at work prior to the mother and child's move to Iowa. The grandmother maintained contact with the child while the child was living with the grandfather. In addition, the child spent two vacations—one for ten days and one for three weeks—with the grandmother in Texas.

---

[1] On October 9, 2019, the child was placed with a maternal uncle. The child was moved to the home of the maternal grandfather on November 1.

The mother's parental rights were terminated on January 25, 2021.[2]  The termination order provided DHS was the custodian of the child and was appointed guardian of the child.  The grandfather and grandmother both stated they would like to be considered as a placement option for the child.  The grandfather took classes to become a licensed foster parent.  Each grandparent participated in an adoptive home study.

A DHS report dated May 14 stated the grandfather was able to provide for the child's needs but also stated:

> I do have concerns about [the grandfather's] past history with [the mother], and the inappropriate arguing and name calling they've both done with each other in front of [the child] in the past.  I also have concerns about the ongoing face-to-face contact [the grandfather] is currently allowing [the mother] to have with [the child], without the prior knowledge of this worker.

The report noted, "[The grandfather] feels that it's okay for [the mother] to have nightly FaceTime calls with [the child] and spend face-to-face time with [the child] as long as [the grandfather] is around also, so [the grandfather], [the mother] and [the child] would all spend time together."  The grandfather and the mother were considered to have "a very dysfunctional father-daughter relationship."  The report also noted the grandmother was able to provide for the child's needs and stated, "[The grandmother] has very firm boundaries with [the mother], and she has been able to keep [the mother] at a safe distance while she focuses on [the child]."

---

[2] The father of the child is unknown.  The parental rights of all putative fathers were terminated.

The mother gave birth to another child, N.S.[3]  A DHS report dated September 9, stated the grandfather no longer permitted in-person contact between the mother and child, but allowed occasional FaceTime calls.  The child stated, however, that he saw his mother and N.S. at Thanksgiving and on other occasions.

In December, DHS conducted interviews with the grandfather and grandmother.  The adoption team supervisor, an adoption team member, and a DHS social worker, as well as the child's guardian ad litem (GAL), were present for the interviews.  The adoption team reviewed the home studies and discussed the matter.  They concluded the grandmother was the best placement for the child.

The grandfather moved to intervene and stay placement.  He claimed it was not in the child's best interests to be moved to Texas and placed in the care of the grandmother.  The court denied the motion for stay of placement, stating it did not have the authority to dictate placement.  The child was moved to the grandmother's care on December 31.  Reports from DHS and the GAL showed the child was doing very well in the grandmother's care.

In January 2022, the grandfather filed a motion to remove DHS as the guardian of the child.  He asked to have the child placed in a guardianship with him.  A hearing was held on March 14.  The grandfather testified he believed the mother and N.S. should have contact with the child.  He stated that while he and the mother previously had a dysfunctional relationship, they were now getting along and talked on the phone three or four times a day.  The mother testified she

---

[3] There was a CINA adjudication for N.S.  At the time of these proceedings, N.S. remained in the mother's custody.

would prefer to have the child placed with the grandfather, as she has a strained relationship with the grandmother.

Melissa Clifton, the DHS supervisor for the adoption unit, testified the grandmother was a "very steady, stable person." She believed the grandmother would do what was necessary for the child. Clifton stated it was not clear the grandfather would be able to set boundaries for the mother. She stated N.S. and the child should have a relationship. She testified the relationship between the siblings did not require the involvement of the mother and DHS did not support including the mother in their FaceTime calls.

On March 23, the juvenile court granted the motion to intervene, limited to the March 14 hearing. The court stated, "[T]he ability and willingness of [the grandmother] to set appropriate boundaries with [the mother] and her age-appropriate expectations of [the child] was determined to make selection of her to adopt [the child] the appropriate choice." The court concluded it could not "find any evidence that, in making the choice [DHS] made in this case, it deviated from its established processes or acted in any way that was irresponsible or unreasonable, or in fact, acted in anything other than the best interest of [the child]." The court denied the motion to terminate the guardianship of DHS. The grandfather appeals.

## II.  Standard of Review

The Iowa Supreme Court recently stated:

> [Iowa Code] [s]ection 232.118 [(2022)] gives the juvenile court discretion in determining whether to remove a guardian. Iowa Code § 232.118(1) ("[T]he court having jurisdiction of the child may, after notice to the parties and a hearing, remove a court-appointed guardian and appoint a guardian in accordance with the provisions

of section 232.117, subsection 3."). "[W]here the legislature has clearly vested the juvenile court with discretion in a specific area, we review the court's decision on that matter for an abuse of discretion." *State v. Tesch*, 704 N.W.2d 440, 447 (Iowa 2005). With that said, we continue to review the evidence de novo to determine whether the juvenile court abused that discretion. *Id.* An abuse of discretion occurs when the juvenile court "bases its decisions on grounds or reasons clearly untenable or to an extent that is clearly unreasonable . . . [or] if it bases its conclusions on an erroneous application of the law." *State v. Thoren*, 970 N.W.2d 611, 620 (Iowa 2022) (omission and alteration in original) (quoting *Stender v. Blessum*, 897 N.W.2d 491, 501 (Iowa 2017)).

*In re K.D.*, 975 N.W.2d 310, 319 (Iowa 2022).

## III. Analysis

The grandfather claims the juvenile court abused its discretion by denying his motion to terminate the guardianship of the child with DHS. He asks to be named as the child's guardian. The grandfather points out that the child lived with him during the CINA proceedings. He contends that if the child was placed in his care in Iowa, it would be easier for the child to maintain a relationship with N.S. and extended family members. He asserts that DHS did not act in the child's best interests by placing the child with the grandmother.

"When DHS is a child's guardian, it determines the specific adoptive home for the child." *In re J.H.*, No. 20-0081, 2020 WL 2988758, at *3 (Iowa Ct. App. June 3, 2020) (quoting *In re T.J.M.*, No. 18-1390, 2018 WL 5840806, at *3 (Iowa Ct. App. Nov. 7, 2018)). "It is DHS's duty and right, however, to choose the placement for these children."[4] *In re S.O.*, No. 13-0740, 2013 WL 3458216, at *2 (Iowa Ct. App. July 10, 2013).

---

[4] As the special concurrence in *J.H.* states,

In terms of the court's involvement in ruling on the application to remove the DHS, this is not a custody battle between the two

DHS follows a selection process and criteria set out in the Iowa Administrative Code. *J.H.*, 2020 WL 2988758, at *3 (citing Iowa Admin. Code r. 441-200.4(3)). The adoption selection committee looks for a "family that can best meet the needs of the child." Iowa Admin. Code r. 441-200(4)(3)(a). Under Iowa Code section 232.117(6), DHS has a legal obligation to "make every effort to establish a stable placement for the child[ ] by adoption or other permanent placement." *K.D.*, 975 N.W.2d at 322.

Section 232.116 provides that a court may remove DHS as the guardian for a child if it finds "(1) the current guardian's actions were unreasonable or irresponsible; and (2) the current guardian's actions did not serve the child[ ]'s best interests." *Id.* at 320. "[We] must focus on the process DHS used and the actions it took in reaching the placement decision and then determine whether those were unreasonable (or irresponsibly undertaken)—all with the best interests of the child in mind." *Id.* (quoting *In re J.L.*, No. 21–0968, 2022 WL 246170, at *9 (Iowa Ct. App. Jan. 27, 2022)). The party seeking the removal of DHS as a child's guardian has the burden to prove both elements by a preponderance of the evidence. *Id.*

We have previously stated:

> In considering whether DHS should be removed as the guardian of a child, we have looked at whether it has engaged in "unreasonable actions." [*In re E.G.*, 745 N.W.2d 741, 744 (Iowa Ct. App. 2007)]. We have also looked at whether "the Department in

competing parties. The juvenile court is not permitted to make its own independent decision as to which family the child should be placed with for adoption. That duty lies with the DHS, as the guardian of the child. . . . The appointed guardian, not the juvenile court, is responsible for making important decisions that have a permanent effect on the life and development of the child and promoting the general welfare of the child.

2020 WL 2988758, at *9–10 (Ahlers, J., specially concurring) (citation omitted).

any way failed in its guardianship duties or in looking out for [the child's] best interests." *Id.*; *accord* [*S.O.*, 2013 WL 3458216, at *2] ("The juvenile court retains the authority to remove DHS as guardian if the department acts unreasonably or irresponsibly in discharging its duties."). The actions of DHS "must serve the best interests of the child." *In re N.V.*, 877 N.W.2d 146, 153 (Iowa Ct. App. 2016); *accord In re C.L.C.*, 479 N.W.2d 340, 345 (Iowa Ct. App. 1991) (noting "the overall principle of chapter 232 [is] to seek the best interests of the child").

*T.J.M.*, 2018 WL 5840806, at *3.

We do not find DHS acted unreasonably or irresponsibly by having the child live with the grandfather for a period of time but then explore other options when considering the best placement for adoption. *See id.* at *5 (finding DHS did not act unreasonably by failing to give deference to one relative because the child previously had been placed in his care); *see also In re I.P.*, No. 19-0715, 2019 WL 3317922, at *5 (Iowa Ct. App. July 24, 2019) ("[P]roviding a good foster home does not create a legal ground to remove the DHS as guardian after termination.").

The DHS adoption team followed the proper protocol in determining to place the child with the grandmother. *See K.D.*, 975 N.W.2d at 320 (noting the court "must focus on the process DHS used and the actions it took"). The adoption team considered the home studies for each grandparent, interviewed the grandparents, then discussed the matter prior to reaching a decision. Clifton, the adoption team supervisor, gave thoughtful reasons for the placement with the grandmother, stating the grandmother was a "very steady, stable person," and she would do what was necessary for the child. On the other hand, there were concerns about the grandfather's close but problematic relationship with the mother. The grandfather had the burden to show by a preponderance of the evidence that DHS

acted unreasonably or irresponsibly. *See id.* We conclude he has not met his burden on this issue.

Furthermore, the grandfather did not meet his burden to show DHS failed to act in the child's best interests. The mother's parental rights were terminated under section 232.116(1)(h) because she "has not demonstrated that she can be a consistent, safe, sober care giver for [the child]." The court found termination of the mother's parental rights was in the child's best interests, stating:

> It is in [the child's] best interest for termination of parental rights to occur. He is three years old and needs permanency now for his long-term growth and development. His mother has not shown herself capable of maintaining her sobriety for any significant length of time. She has admitted to use of methamphetamine as recently as approximately two weeks prior to the date of the trial *while pregnant with another child.* [The child] should not have to wait longer for his permanency needs to be met.

Despite these problems with the mother's care of the child, the grandfather testified he did not understand why the mother was not supposed to have ongoing contact with the child after the termination. A DHS worker told the grandfather that he should no longer allow contact between the mother and child, but he continued to allow FaceTime calls, stating he did not believe it constituted contact. Although the FaceTime calls were ostensibly for the child and N.S. to maintain contact, the grandfather stated the child would talk to the mother during these calls.

We conclude DHS was acting in the child's best interests by placing the child with the grandmother. The grandmother was able to set boundaries for the mother, which the grandfather was unable to do. We affirm the juvenile court's decision denying the grandfather's motion to remove DHS as the child's guardian.

**AFFIRMED.**