# IN THE COURT OF APPEALS OF IOWA

No. 22-1867
Filed December 20, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**AMBER RENE WILSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Jones County, Ian K. Thornhill, Judge.

The defendant appeals the sentences imposed following her convictions for first-degree theft, drug tax stamp violation, and conspiracy to commit a forcible felony. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee.

Considered by Greer, P.J., and Ahlers and Buller, JJ.

**GREER, Presiding Judge.**

Amber Wilson appeals the sentences imposed following her convictions for first-degree theft, drug tax stamp violation, and conspiracy to commit a forcible felony. She argues that the sentencing court abused its discretion in accepting and considering the victim impact statements from jail staff. Because we find that the jail staff suffered emotional harm as a result of the conspiracy to break out of the jail and, thus, were victims, we affirm.

**I. Background Facts and Prior Proceedings.**

Wilson committed a burglary in Wisconsin with her then-boyfriend, Joshua Humbach. They stole a vehicle, several firearms, and firearm-related items from Humbach's cousin and his wife. The next day, while in Iowa, law enforcement learned Wilson was driving a stolen vehicle in Anamosa, and, after executing a search warrant, law enforcement confirmed the vehicle was indeed stolen and it contained the stolen firearms, a large amount of cash ($1333), and a clear plastic baggie of methamphetamine. Wilson was charged with possession with intent to deliver methamphetamine while in possession or control of a firearm, a class "B" felony, in violation of Iowa Code sections 124.401(1)(b)(7) and .401(1)(e) (2022); first-degree theft, a class "C" felony, in violation of sections 714.1(4) and .2(1); and operating a motor vehicle without owner's consent, an aggravated misdemeanor, in violation of section 714.7.[1]  Because of the discovery of the drugs, the trial information was amended to add a drug tax stamp violation, a class "D" felony in violation of sections 453B.1(3)(1) and .3.

---

[1] Case FECR008757.

After the arrest and while the case was pending, Wilson was held at the Jones County Jail on these charges; Humbach was also held there. While in jail, in July 2022, Wilson joined a three-way phone call with Humbach and her sister, who was not in custody. On the phone call, Wilson hatched a plan to break out of jail the next morning. She explained that she had been watching and knew "who comes, who goes" from the jail each day. She said, "I watch these guys every day, babe. I've been thinking about this every day." She attempted to persuade Humbach to grab the belt of "whoever does the cleaning cart—grab their belt." After that, she told her boyfriend to "[b]eat the fuck out of them. Knock them motherfuckers out. I don't care if you smash their heads into the fucking toilet, you fuck 'em up." At the end of the call, she made Humbach confirm that he understood and intended to go through with the plan. Colton Utley, the jailer, intercepted the phone call, and Wilson and Humbach never completed the plot.

After this incident and following a motion to consolidate the cases involving Wilson and Humbach, the State charged Wilson in a second case with conspiracy to commit a forcible felony, a class "C" felony, in violation of sections 706.1(1)(a), .1(3), and .3(1) based on Wilson's actions plotting escape from custody.[2] In September 2022, on the day that the first case was set to go to trial, Wilson entered into a plea agreement with the State, whereby she would enter an *Alford* plea[3] to first-degree theft and the drug tax stamp violation; she also pled guilty to the conspiracy to commit a forcible felony charge. In exchange, the State dismissed the other two charges in FECR008757.

---

[2] Case FECR008839.
[3] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

The sentencing court held a sentencing hearing for both cases in October 2022. At the hearing, the sentencing court accepted written victim statements from Utley along with Laxmi Basnet and Ryan Lovejoy, who are other staff at the jail. It also heard oral statements by two other jail staff members, Jill Wernimont and Sarah Tate, at the hearing. Prior to the sentencing hearing, Wilson filed an objection to the Utley victim impact statement. Then, at the hearing, Wilson objected to the district court's consideration of the jail staff's statements. She argued that as the conspiracy was stopped, the jail staff members could not have suffered any physical, emotional, or financial harm as a result of the offense, so the jail staff did not fall under the statutory definition of victim. The State responded that the jail staff had in fact suffered emotional harm. The district court overruled the objection, finding that "anybody who was a jail staff can be considered a victim of this offense . . . knowing that this could have happened and the realization that they might have been victimized, even though the weren't."

In her statement, Basnet explained that she "was shocked" at the thought of the planned attack and "it would have been detrimental for my family to have had me severely injured or lose me completely." Lovejoy wrote that he found "the potential of a violent escape attempt sickening." Wernimont stated that "as jailers we were the—we are the ones who are responsible for keeping things safe. Even this event gave me higher awareness of my surrounding[s] and never to let my guard down any time or anywhere." Tate said, "There is not a single jail staff member that hasn't thought that could have been me. I thought that. That could have been me. . . . Though this horrendous act did not happen, it has and will continue to have a lasting impact on every member of this jail staff." The

sentencing court also considered exhibits, which included nine letters from friends and family of Wilson as well as her pastor, in mitigation.

The sentencing court sentenced Wilson to an indeterminate term not to exceed ten years on the first-degree-theft conviction, five years on the drug-tax-stamp-violation conviction, and ten years on the conspiracy-to-commit-a-forcible-felony conviction. The sentences for the first-degree theft and drug tax stamp violation were to run concurrent to each other but consecutive to the sentence for conspiracy to commit a forcible felony, for a total term of incarceration not to exceed twenty years. While announcing the sentence, the sentencing court explained that "what could have happened . . . has an impact in this matter, and that is harm." Wilson appeals.

## II. Standard of Review.

We review sentences for correction of errors at law. *State v. Damme*, 944 N.W.2d 98, 103 (Iowa 2020). We reverse only if the sentencing court abused its discretion or there was some defect in the sentencing procedure. *Id.* An abuse of discretion occurs when "the district court exercises its discretion on grounds or for reasons that were clearly untenable or unreasonable." *State v. Gordon*, 921 N.W.2d 19, 24 (Iowa 2018). When the sentencing court abuses its discretion, the defendant is entitled to a new sentencing hearing. *State v. West Vangen*, 975 N.W.2d 344, 355 (Iowa 2022).

**III. Analysis.**

Wilson renews her argument that the sentencing court erred in considering the State's five victim impact statements,[4] specifically because they were from persons she argues are not defined as victims under Iowa Code section 915.10(3). She conceded to the district court that the jail staff "could have emotional consequences," but maintains considering them as victims would be an improper expansion of what was contemplated by the statute. Iowa Code section 915.10(3) defines a victim as either "a person who has suffered physical, emotional, or financial harm as the result of a public offense or a delinquent act, other than a simple misdemeanor, committed in this state" or "the immediate family members of a victim who died or was rendered incompetent as a result of the offense or who was under eighteen years of age at the time of the offense." As Wilson's offenses did not lead to anyone being rendered incompetent or dying and did not involve minors, a victim for the purposes of her sentencing hearing is limited to "a person who has suffered physical, emotional, or financial harm as the result" of her offenses.

We have generally adhered to an expansive definition of "victim" to effectuate the purpose of the statute in recognition of our "responsibility to victims and witnesses to ensure their equitable and fair treatment, protect them from intimidation and further injury, [and] assist them in overcoming emotional and

---

[4] Although Wilson pled guilty, because she is challenging the sentences imposed and not the guilty plea, she has good cause for appeal. Iowa Code § 814.6(1)(a)(3) (granting the right of appeal "where the defendant establishes good cause"); *Damme*, 944 N.W.2d at 105 ("We hold that good cause exists to appeal from a conviction following a guilty plea when the defendant challenges his or her sentence rather than the guilty plea.").

economic hardships resulting from criminal acts." *State v. Lopez*, 872 N.W.2d 159, 174 (Iowa 2015) (citation omitted). In taking this expansive approach, we have interpreted section 915.10 to cover individuals directly harmed by the offense, even if not the intended victim, at the time of the commission of the offense. *See State v. Tesch*, 704 N.W.2d 440, 451 (Iowa 2005) (construing "victim" broadly to include those who suffered "harm as a direct consequence of the offense"). The question is whether the harm is the "result" of Wilson's criminal act. *See id.* (applying the common meaning of "result" which is "anything that comes about as a consequence or outcome of some action"). Furthermore, the Supreme Court has defined emotional harm as fright or anxiety. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994). The Supreme Court has also included being tearful, angry, and suffering anguish as emotional injuries. *Snyder v. Phelps*, 562 U.S. 443, 450 (2011).

Here, the jail staff who submitted written statements and made in-person statements at the sentencing hearing had suffered emotional harm that made them victims under section 915.10(3). Any one of these staff members were at risk of some injury had Wilson successfully completed her escape plan. To that point, the district court noted, "I consider the emotional trauma that could cause them knowing that this could have happened and the realization that they might have been victimized, even though they weren't. The emotional trauma that can cause someone is real." Utley suffered emotional harm contemporaneous to the commission of the offense—conspiracy to commit a forcible felony—when he intercepted the three-way phone call and listened to Wilson's plot to physically harm jail staff. The other jail staff suffered emotional harm when they later learned

of the three-way phone call and Wilson's escape plot. They detailed how they felt frightened or newly worried about the potential for a violent escape by an inmate. After learning about Wilson's plans with her boyfriend, the jail staff worried about the injuries they could have suffered and the potential detriment to their friends and families. Neither that the physical harm was hypothetical because Utley intercepted the three-way phone call and Wilson was unable to carry out the escape nor that the emotional harm occurred after the intended act was thwarted prevents the jail staff from falling within the statutory definition of victims. Therefore, we affirm the sentences imposed by the sentencing court.

**IV. Conclusion.**

Because the jail staff suffered emotional harm in the form of fear and newfound awareness of the potential for a violent attack as a result of Wilson's conspiracy to commit a forcible felony, they were victims, and the district court did not err in considering their victim impact statements. We affirm the sentences imposed.

**AFFIRMED.**