STATE of Iowa, Appellee,

v.

Jerry Bert SUMPTER, Jr., Appellant.

No. 88–651.

Supreme Court of Iowa.

March 22, 1989.

Rehearing Denied April 13, 1989.

As Corrected April 17, 1989.

Theodore R. Hoglan of Fairall, Fairall, Kaplan, Hoglan & Condon, Marshalltown, for appellant.

Thomas J. Miller, Atty. Gen., Sarah J. Coats, Asst. Atty. Gen., and Diann Wilder–Tomlinson, County Atty., for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

This defendant, Jerry Bert Sumpter, Jr., was already serving two consecutive life sentences for the 1984 kidnapping and sexual abuse of Janet Levis when, in 1987, he pleaded guilty to second-degree murder in the 1980 death of Susan K. Vickers.

Prior to the sentencing for the second-degree murder, the presentence investigator received "victim impact statements" from two aunts and an uncle of Susan Vickers. *See* Iowa Code § 910A.5A (1987). These statements were included in the presentence investigation report, and the court presumably considered them in sentencing Sumpter. The aunts and uncle said they wished Sumpter could be sentenced to death for the murder and spoke of the emotional harm each had suffered as the result of Susan's murder. The court sentenced Sumpter to serve twenty-five years with the sentence to run consecutively to the two prior life sentences he was already serving.

Sumpter appealed, arguing that (1) the court incorrectly considered the victim impact statements of the victim's aunts and uncle, and (2) the court abused its discretion in ordering that the present sentence be served consecutively to the two prior life sentences; and (3) the court erred in ordering restitution of attorney fees and victim costs. Initially, Sumpter also challenged the court's assessment to him of certain funeral expenses and attorney fees. The State concedes error on these matters, and they are no longer involved in this appeal.

I. *The Victim Impact Statements.*

Iowa Code section 910A.5A allows a "victim," prior to sentencing, to

file a signed victim impact statement with the presentence investigator, and a filed impact statement shall be included in the presentence investigation report.

The court shall consider a filed victim impact statement in determining the appropriate sentence and in entering any order of restitution to the victim pursuant to chapter 910.

For purposes of the section above, a "victim" is

a person who has suffered physical, emotional, or financial harm as the result of a public offense, other than a simple misdemeanor, committed in this state. The term also includes the immediate family members of a victim who died or was rendered incompetent as a result of the offense or who was under eighteen years of age at the time of the offense.

Iowa Code section 910A.1(1) (1987).

Sumpter argues that the aunts and uncle were not in the group of persons who may make victim impact statements because they are neither the victim herself nor members of her "immediate family." He also argues that the victim impact statements were "quite inflammatory and could very possibly have affected the Court in its judgment."

The State counters that the term "immediate family" does not necessarily exclude aunts and uncles, "immediate family" being an ambiguous term depending on variables such as age and marital status and importing different meanings to different

individuals. The State further contends that it really makes no difference whether the aunts and uncle are members of the victim's immediate family because section 910A.1(1) does not limit the definition of "victim" to immediate family members. It also includes any person who "has suffered physical, emotional, or financial harm as a result of the public offense." Even if the impact statements were improperly submitted, the State argues Sumpter could not have been prejudiced because a consecutive twenty-five-year sentence would not really matter, given the fact that he was already serving two consecutive life sentences.

■ A. *Who may execute a victim impact statement?* The question of who is entitled by statute to file a victim impact statement turns on the interpretation of Iowa Code section 910A.1(1). A statute should not be construed so as to make any part of it superfluous, unless no other reasonable construction is available. *Guthrie County Bd. of Supervisors v. Frevert–Ramsey–Kobes*, 431 N.W.2d 768, 769 (Iowa 1988). If we accept the State's reading of the "victim" definition to allow the first sentence to permit any person, not necessarily the actual victim, who suffers physical or emotional harm by a public offense to file a victim impact statement, the second sentence (the "immediate family" sentence) will be rendered superfluous, because such persons would already have been included in the first sentence.

As applied here, we interpret the first part of the "victim" definition to include only Susan Vickers, the actual subject of the murder, not others who only suffered physical or emotional harm because of her death. Here, the first part of the "victim" definition does not include aunts and uncles.

■ The question remains whether aunts and uncles fall within the definition of "immediate family." We have frequently written about the "immediate family," but we have yet to adopt a precise definition of the term. In fact, the term seems almost incapable of precise definition. The meaning of "family" necessarily depends on the context in which the word is used, the purpose

intended to be accomplished by it, and the facts and circumstances of each case. Black's Law Dictionary 544 (5th ed. 1979).

We have discussed the phrase "immediate family" in the analogous context of bystander recovery. We adopted the concept of bystander recovery in *Barnhill v. Davis*, 300 N.W.2d 104, 108 (Iowa 1981), which we held to be limited to "husband and wife or [persons] related within the second degree of consanguinity or affinity." *Id.* In the later case of *Roberts v. Bruns*, 387 N.W.2d 140, 143 (Iowa 1986), we referred to this limited class of persons as "immediate family." Therefore, adopting the definition previously applied by our court in bystander cases, the term "immediate family" would include spouses and persons related within the second degree of consanguinity or affinity.

Relationships through consanguinity and affinity are adopted from the civil law. 23 Am.Jur.2d *Descent and Distribution* § 55, at 793 (1983). Therefore,

[c]omputing by the rule of the civil law, parents and children of a deceased are related to him in their first degree. The second degree comprises the grandparents, grandchildren, brothers, and sisters of the deceased. *Uncles, aunts, nephews, nieces, and great-grandparents of the deceased are related to him in the third degree.*

*Id.* (emphasis added). It would seem logical to impute this scheme to the concept of the "immediate family" under section 910A.1(1).

We conclude that the aunts and uncle were not "victims" under any of the statutory definitions of the term and therefore had no standing under section 910A.5A to file victim impact statements. The question remains whether this requires vacation of the sentence. This brings us to the next issue.

■ B. *Prejudice.* Sumpter does not allege specific prejudice; he merely contends that the victim impact statements were "quite inflammatory and could very possibly have affected the Court in its judgment." The State, apparently unsure

of the grounds of prejudice to which Sumpter is alluding, contends that, if he is arguing that a consecutive twenty-five-year sentence might prejudice his chances of obtaining commutation of his life sentences, no prejudice has been shown because Sumpter has no constitutional or inherent right to a commutation of his life sentence. *See Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed. 2d 158, 165 (1981).

In *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), the United States Supreme Court, in a five-to-four decision, held that the introduction of a victim impact statement at the sentencing phase of a capital murder trial before a jury violated the eighth amendment. In so finding, the Court stated that such evidence might divert the jury's attention from the defendant's background and record and the circumstances of the crime and focus it instead on irrelevant factors. *Id.* at 504, 107 S.Ct. at 2533–34, 96 L.Ed.2d at 449–50.

Despite this concern, the Court was careful not to rule out the use of victim impact statements under all circumstances. It stated that

> [o]ur disapproval of victim impact statements at the sentencing phase of a capital case does not mean, however, that this type of information will never be relevant in any context. Similar types of information may well be admissible because they relate directly to the circumstances of the crime. Facts about the victims and family also may be relevant in a noncapital criminal trial. Moreover, there may be times that the victim's personal characteristics are relevant to rebut an argument offered by the defendant.... The trial judge, of course, continues to have the primary responsibility for deciding when this information is sufficiently relevant to some legitimate consideration to be admissible, and when its probative value outweighs any prejudicial effect.

*Id.* at 507 n. 10, 107 S.Ct. at 2535 n. 10, 96 L.Ed.2d at 451 n. 10. The Supreme Court thus reaffirmed the view that sentencing judges must be given considerable discretion in weighing the factors which entered into the sentencing decision.

The victim impact statements in this case were hostile and bitter, and they expressed a strong desire for the ultimate retribution for their niece's death. But they told the judge little, if anything, that was not already apparent. It could naturally be assumed that family members would be bitter toward a defendant in such a case and that a hanging, if possible, would be appreciated. The victim impact statements, however, did not contain the prejudicial type of information which would not otherwise be available to the judge and which we have held to be prejudicial, such as allegations of unproven crimes or other facts outside the record.

As to prejudice, Sumpter contends only that the victim impact statements "could very possibly" have affected the court's judgment. Such an assertion, we believe, is an insufficient predicate for a finding of error. Any effect these victim impact statements might have had in the sentencing decision was insufficient to require vacation of the sentence.

## II. *The Consecutive Sentence.*

▪ The sentencing judge's decision to impose the twenty-five-year sentence consecutively with the prior life sentences was based on Iowa Code section 901.8 which provides that, "[i]f a person is sentenced for two or more separate offenses, the sentencing judge may order the second or further sentence to begin at the expiration of the first or succeeding sentence." Sumpter contends that, because his murder of Vickers actually occurred *before* the consecutive life sentences for which he was already doing time, the court had no authority under section 901.8 to sentence him to a consecutive term. He cites no authority for this proposition. The State contends that the consecutive sentence was properly within the court's discretion taking into consideration all of the relevant factors.

The plain language of section 901.8 belies Sumpter's contention. The statute requires only that at least two separate of-

fenses occur. If two or more offenses have occurred, it is within the judge's discretion to have the sentence for the second offense run consecutively. We do not read into the statute any sort of temporal prohibition on consecutive sentencing based on the order of crimes or the convictions for them.

A trial judge is expected to

consider all pertinent matters in determining proper sentence, including the nature of the offense, the attending circumstances, defendant's age, character and propensities and chances of reform. The courts owe a duty to the public as much as to the defendant in determining a proper sentence. The punishment should fit both the crime and the individual.

*State v. Williams*, 315 N.W.2d 45, 59–60 (Iowa 1982) *(quoting State v. Hildebrand,* 280 N.W.2d 393, 396 (Iowa 1979)). The district court enjoys a strong presumption in its favor which will not be overcome absent an affirmative showing of abuse by the defendant. *State v. Noonan*, 246 N.W.2d 236, 237 (Iowa 1976); *State v. Pappas*, 337 N.W.2d 490, 494 (Iowa 1983). We do not find that abuse here.

We conclude that the victim impact statements do not require vacation of the sentence, and that the district court did not abuse its discretion in sentencing Sumpter to the consecutive terms. The judge's findings are supported in the record, and the sentence was within statutory parameters. We therefore affirm this portion of the judgment.

III. *The Order for Restitution.*

Sumpter claims it was error for the court to order him to pay attorney fees and victim restitution pursuant to Iowa Code chapter 910 (1987) on the ground that the statute was not effective in 1980, when the crime was committed. The State concedes error in this regard and agrees that the sentence must be vacated and the case remanded for resentencing. Accordingly, we vacate the sentence and remand for resentencing with directions to eliminate the provisions of the judgment entry per-

taining to payment of attorney fees and victim restitution expenses.

SENTENCE VACATED; REMANDED FOR RESENTENCING.