# IN THE COURT OF APPEALS OF IOWA

No. 14-1142
Filed September 10, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAVID ANTHONY ARAIZA,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Story County, Lawrence E. Jahn, District Associate Judge.

        David Araiza appeals the judgment and sentence entered following his convictions for two counts of invasion of privacy—nudity.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Aaron Rogers, Assistant Attorney General, Stephen Holmes, County Attorney, and Tiffany Lynne Meredith, Assistant County Attorney, for appellee.

        Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, P.J.**

Following a bench trial, the district court found David Araiza guilty of two counts of invasion of privacy—nudity, in violation of Iowa Code section 709.21 (2013) and not guilty of two counts of unlawfully intercepting communications, in violation of section 808B.2(1)(a). The invasion-of-privacy counts were based on Araiza's unauthorized installation of cameras in the bedroom of a home. The home's owner, Lynnette, hired Araiza to perform maintenance work in the kitchen and basement of the home. While Araiza was inside, he ascended the stairs to the second floor bedroom of Lynnette's adult daughter, hid the cameras, and captured compromising images.

At sentencing, Araiza objected to the court's consideration of Lynnette's victim impact statement. The court overruled the objection and allowed Lynnette to provide a statement. The court subsequently imposed sentence and ordered restitution, which included the $81.23 cost of replacing door locks, as well the costs of the action.

On appeal, Araiza contends (1) Lynnette was not a "victim" whose statement could be considered at sentencing, (2) the State failed to prove a causal connection between his criminal act and the restitution order, and (3) the district court incorrectly assessed court costs against him for the two dismissed charges.

## I. *Victim Impact Statement*

A "victim" may present a victim impact statement to the court. *See* Iowa Code § 915.21(1); *State v. Matheson*, 684 N.W.2d 243, 244 (Iowa 2004) (stating authority is "wholly statutory"). Iowa Code section 915.10 defines "victim" as "a

person who has suffered physical, emotional, or financial harm as the result of a public offense or a delinquent act, other than a simple misdemeanor, committed in this state." Iowa Code § 915.10(3).

Araiza voiced no objection to a victim impact statement from Lynnette's daughter but objected to Lynnette's victim impact statement on the ground "she would not qualify as a victim within the meaning of the Code." In overruling the objection, the district court stated:

> I'm looking at the Code section that you both refer to, Section 915.10(3), which defines the term victim for purposes of this chapter, and it does define it as "a person who has suffered physical, emotional, or financial harm as a result of the public offense." And the question then before the Court is how broadly do you construe the term or the phrase "as a result of a public offense"?
> I see you both make good points, but I believe that this chapter should be construed liberally to provide for the rights of the victim, and I am going to allow the statement by Lynnette . . . . I do believe that she could certainly have suffered emotional harm by virtue of the fact that evidence shows that cameras were placed within her home, that she was the one that hired Mr. Araiza to do the work on her home, and she was the one that entrusted him to come and go within the home, and viewing it as if I was in the home I would say that that could result in—that his public offense of video recording persons within the home could have resulted in emotional harm to her. So I will allow her to make her sta[tement].

Under the unique facts of this case, we discern no error in the court's admission of Lynnette's victim impact statement. Although Lynnette was not the person whose images were captured on the cameras, she was the person who hired Araiza and let him into her home. Those acts facilitated Araiza's installation of cameras in her daughter's bedroom.

Lynnette's direct involvement distinguishes this case from *State v. Sumpter*, 438 N.W.2d 6 (Iowa 1989), and *State v. Tesch*, 704 N.W.2d 440 (Iowa 2005), cited by Araiza.

In *Sumpter*, the district court received victim impact statements from two aunts and an uncle of a murdered woman. 438 N.W.2d at 8. The Iowa Supreme Court concluded these relatives were not "victims" within the meaning of the language quoted above. *Id.* The only "victim" under that language was "the actual subject of the murder, not others who only suffered physical or emotional harm because of her death." *Id.* The court reasoned that a different reading would render superfluous a second sentence in the statutory provision allowing certain "immediate family members" to file victim impact statements. *Id.*

In *Tesch*, the court reaffirmed *Sumpter's* reasoning. 704 N.W.2d at 452. The court concluded the wife of a man who sustained injuries as a result of the defendant's acts was not a victim within the meaning of the quoted statutory language. *Tesch*, 704 N.W.2d at 452. The court stated the wife's harm "flowed from the injuries suffered by her husband as a result of the offense and not directly from the criminal acts." *Id.*

Here, in contrast, the trial record reflects Lynnette independently sustained "emotional . . . harm as the result of" Azaira's public offense. She was a "victim" within the meaning of the first sentence of Iowa Code section 915.10(3) and the district court did not err in admitting her statement.

## II. *Restitution*

Araiza challenges the $81.23 in restitution ordered by the district court. He asserts the State failed to prove a causal connection between his criminal act and this restitution order.

Iowa Code section 915.86(14) authorizes compensation for certain economic losses "incurred as a direct result of an injury to or death of the victim," including "[r]easonable expenses incurred by a victim [or] the victim's parent . . . to replace locks . . . at the victim's residence or at the residential scene of a crime, not to exceed five hundred dollars per residence." *See also State v. Jenkins*, 788 N.W.2d 640, 645 (Iowa 2010).

Lynnette had three keyed locks on outside doors of the home—one in the service door of the garage, a second in the front door, and a third in the back door. Although Lynnette only left the garage key for Araiza, he had access to all three keys. With respect to the garage key, Lynnette testified, he "could have at any point taken that key and copied it and put it back because I wouldn't have even missed it."

Lynnette had the locks changed shortly after the cameras were discovered. When asked why, she testified, "Because I was afraid." She explained:

> Something was outside my house and come in and left cameras and I didn't want any more invasion into my house, and we had viewed the video card in one of the cameras and we saw Dave's picture, and I was afraid because I knew when I fired him things could happen, and I didn't know how it was going to go.

Lynnette's charge card reflected a cost of $81.23 for new locks.

On this record, we conclude the cost of replacing the locks was a reasonable expense incurred "as a direct result of" injury to Lynnette. We discern no error in the court's ruling. *See id.* at 642 (reviewing restitution orders for errors of law).[1]

### III.    *Court Costs for Dismissed Counts*

Araiza contends the district court improperly assessed court costs against him for the two charges on which he was acquitted. *See* Iowa Code § 910.2 (referring to assessment of court costs in "all criminal cases in which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered"); *State v. Petrie*, 478 N.W.2d 620, 622 (Iowa 1991) (stating "where the plea agreement is silent regarding the payment of fees and costs, that only such fees and costs attributable to the charge on which a criminal defendant is convicted should be recoverable under a restitution plan"). We disagree.

The judgment entry only refers to the counts on which Araiza was convicted and the "fines and charges" portion of the order again makes reference to those counts alone. While the final portion of the order uses the word "costs" in connection with certain dismissed counts, the order goes on to state the "costs assessed to the defendant" are "to be paid as ordered above."

---

[1] *In State v. Freeman*, No. 12-2109, 2013 WL 5758240, at *3 (Iowa Ct. App. Oct. 23, 2013), we found "the link between the criminal offense committed and subsequent expenses incurred by the victim" to be too "attenuated" to award restitution. Freeman is distinguishable because there, the locks were not changed as a result of the crime the defendant committed but based on information the victim later learned about the defendant. *See id.*

We conclude the district court did not assess costs for the dismissed counts.

We affirm Araiza's judgment and sentence.

**AFFIRMED.**