# IN THE COURT OF APPEALS OF IOWA

No. 18-1522
Filed June 3, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LARON D'PREE HAMPTON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Mills County, Timothy O'Grady, Judge.

A defendant appeals from three convictions for second-degree sexual abuse. **JUDGMENT OF CONVICTIONS AFFIRMED, AND SENTENCES AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

A defendant appeals his convictions and sentences for three counts of second-degree sexual abuse. First, he argues he received ineffective assistance of counsel due to his trial counsel's removal of a juror by a peremptory strike instead of by a challenge for cause. He also claims his trial counsel was ineffective for failing to object to a victim impact statement submitted by the victim's foster parent. He further argues the court failed to make a valid determination of his reasonable ability to pay restitution.

We find that the defendant suffered no prejudice by his counsel's use of a peremptory strike to remove a juror that could have been challenged for cause. We also find the court's receipt of a victim impact statement by the victim's foster parent did not result in prejudice and therefore the defendant's ineffective-assistance-of-counsel claim fails. However, we vacate the portions of the trial court's orders pertaining to restitution and remand for a redetermination of restitution in accordance with Iowa Supreme Court precedent.

**Background Facts and Proceedings**

The defendant, Laron D'Pree Hampton, was convicted of three counts of second-degree sexual abuse for multiple assaults of nine-year-old C.S. At the time of the abuse, Hampton was dating C.S.'s mother. Both Hampton and C.S. tested positive for chlamydia following the abuse. C.S. was subsequently placed in foster care.

A trial was held in July 2018. During voir dire, juror seven revealed that members of his immediate family and his spouse's family had suffered sexual abuse; several were approximately C.S.'s age at the time of abuse. Upon being

asked, "Do you believe that you could be a fair and impartial juror," juror seven responded, "It would be rough." Defense counsel passed for cause and later struck juror seven with a peremptory strike. At the close of trial, the jury found Hampton guilty on all three counts of Iowa Code section 709.3(1)(b) (2017).

At sentencing, C.S.'s foster mother presented an oral victim impact statement without objection. In her statement, the foster mother commented on Hampton's failure to accept responsibility and asserted C.S. had suffered trauma as a result of having to meet with lawyers. The trial court sentenced Hampton to two consecutive twenty-five-year sentences, with a third twenty-five-year sentence to run concurrently. The trial court noted the impact and trauma to C.S. as a reason for the sentence. In the sentencing order, the trial court ordered Hampton to pay restitution; fines, penalties and surcharges; court costs; and court-appointed attorney fees. The court found that Hampton had a "reasonable ability to pay attorney fees." Hampton appealed.

**Standards of Review**

"Our review of a sentence imposed in a criminal case is for correction of errors at law." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "We will not reverse the decision of the district court absent an abuse of discretion or some defect in the sentencing procedure." *State v. Letscher*, 888 N.W.2d 880, 883 (Iowa 2016) (quoting *Formaro*, 638 N.W.2d at 724).

"We review restitution orders for correction of errors at law. When reviewing a restitution order, we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *State v. Jenkins*, 788 N.W.2d 640, 642 (Iowa 2010).

**Discussion**

### I. Ineffective Assistance of Counsel

Hampton argues his trial counsel was ineffective for failing to strike juror seven for cause and failing to object to a victim impact statement by the victim's foster mother.

Typically, postconviction-relief proceedings are the appropriate venue for a claim of ineffective assistance of counsel. *State v. Rice*, 543 N.W.2d 884, 888 (Iowa 1996). "However, where an adequate basis for a decision is present in the record, they will be decided on direct appeal." *Id.* If the record is inadequate, a defendant must bring his ineffective-assistance-of-counsel claim in a postconviction-relief action. *State v. Gomez Garcia*, 904 N.W.2d 172, 186 (Iowa 2017). "We will address on direct appeal claims of ineffective assistance of counsel only if we determine the development of an additional factual record would not be helpful and these elements can be decided as a matter of law." *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). We find the record sufficient to review Hampton's ineffective-assistance-of-counsel claims.

### A. Failure to challenge juror 7 for cause.

During voir dire, juror seven indicated his wife and sister-in-law had suffered sexual abuse at young ages. When asked whether he could be fair and impartial, the juror said, "It would be rough." Defense trial counsel passed for cause and later struck the juror with a peremptory strike. Hampton now argues the failure to

challenge juror seven for cause amounts to ineffective assistance of counsel, requiring reversal. We disagree.

To succeed on an ineffective-assistance-of-counsel claim, a defendant must prove that "(1) his trial counsel failed in an essential duty, and (2) prejudice resulted from counsel's error." *State v. McPhillips*, 580 N.W.2d 748, 754 (Iowa 1998). A claim fails "if either element is absent." *Id.* To prove the first prong of an ineffective-assistance-of-counsel claim, the defendant must prove "his attorney's performance was not within the normal range of competence." *Id.* (quoting *State v. Spurgeon*, 533 N.W.2d 218, 220 (Iowa 1995)). We begin by presuming competence. *Id.* To satisfy the second prong, a defendant establishes prejudice by showing there is a "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Graves*, 668 N.W.2d 860, 882 (Iowa 2003) (citation omitted). Challenges for cause are governed by Iowa Rule of Criminal Procedure 2.18(5), which provides that a challenge for cause "*may*" be made when a juror has "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial." Iowa R. Crim. P. 2.18(5)(k) (emphasis added).

In *State v. Neuendorf*, 509 N.W.2d 743, 746–47 (Iowa 1993), the Iowa Supreme Court abandoned the rule from *State v. Beckwith*, 46 N.W.2d 20, 23 (Iowa 1951), which held that the error in denying a challenge for cause is not cured by the juror's ultimate removal via peremptory strike. The *Neuendorf* court said,

> Whatever [the juror's] prejudices were, she did not serve on defendant's jury. The search for legal prejudice must therefore focus on the potential for prejudice that flowed from forcing defendant to

use a peremptory challenge on Juror Brandt that might have been used to remove another juror. In the absence of some factual showing that this circumstance resulted in a juror being seated who was not impartial, the existence of prejudice is entirely speculative. We believe it is too speculative to justify overturning the verdict of the jury on that basis alone.

509 N.W.2d at 746. The court found no prejudice where the two jurors of questionable impartiality were both struck from the jury. *Id.* at 747.

Hampton asks that *Neuendorf* be overturned, which we are not at liberty to do. *Figley v. W.S. Indus.*, 801 N.W.2d 602, 608 (Iowa Ct. App. 2011) ("[W]e are not at liberty to overturn precedent of our supreme court."); *see also State v. Jonas*, 904 N.W.2d 566, 568 (Iowa 2017) (declining to overrule *Neuendorf*). To the contrary, we find *Neuendorf* demands the rejection of Hampton's ineffective-assistance claim. While in *Neuendorf* the district court overruled a challenge for cause as to a prospective juror, no challenge for cause was made in the instant case. In both cases, the offending jurors were struck with peremptory strikes. Even if Hampton's trial counsel had challenged for cause and the district court had rejected the challenge, *Neuendorf* would require a showing of prejudice "based on matters that appear of record" beyond the mere use of a peremptory strike in place of a challenge for cause. *Neuendorf*, 509 N.W.2d at 747. As to this portion of Hampton's ineffective-assistance-of-counsel claim, Hampton bases his allegation of prejudice solely on trial counsel's failure to challenge for cause. This is not enough.

Hampton cites to a 2018 decision of this court for the proposition that "where defense counsel unreasonably fails to strike an unqualified juror for cause, the post-conviction movant is entitled to a presumption of *Strickland* prejudice." *Dixon*

*v. State*, No. 16-2198, 2018 WL 3471833, at *7 (Iowa Ct. App. July 18, 2018) (quoting *McGuire v. State*, 523 S.W.3d 556, 564 (Mo. Ct. App. 2017)).  We find this decontextualized quote inapplicable.  In *Dixon*, the defendant raised ineffective-assistance claims based on trial counsel's failure to challenge two jurors for cause.  *Id.* at *3.  Similar to the instant case, one of the challenged jurors was eliminated via peremptory strike.  *Id.*  However, in *Dixon*, the parties agreed that a challenged juror "did in fact serve on the jury."  *Id.* at *7.  This important difference distinguishes *Dixon* from the instant case.  Notably, the *Dixon* quote mentioned in Hampton's brief was prefaced with our statement that "a postconviction claimant establishes an entitlement to relief *upon showing an actually biased juror served on the jury*."  *Id.* (emphasis added).

A more germane recent decision supports our analysis.  *See Powell v. State*, No. 18-0542, 2019 WL 2524264 (Iowa Ct. App. June 19, 2019).  In *Powell*, we found no prejudice and affirmed the postconviction court's denial of an ineffective-assistance-of-counsel claim where trial counsel's for-cause objections to a juror were twice overruled but the juror was subsequently eliminated via peremptory strike.  *See id.* at *7.  Having held in *Powell* that no prejudice resulted where trial counsel's for-cause objections were overruled but the challenged juror was nevertheless eliminated via peremptory strike, we now hold there was no prejudice in the instant case.  Though no for-cause objection was made, the juror was later eliminated and did not serve on the jury.  Hampton has made no factual showing of prejudice, and therefore "the existence of prejudice is entirely speculative."  *See Neuendorf*, 509 N.W.2d at 746.  We find no ineffective assistance as to the failure to challenge juror seven for cause.

**B. Victim Impact Statement**

Hampton's next argument under his ineffective-assistance claim centers on trial counsel's failure to object to a victim impact statement given by the minor victim's foster parent at sentencing. Hampton argues that foster parents cannot permissibly submit victim impact statements. We find the record below sufficient to address this claim. *See Rice*, 543 N.W.2d at 888.

The propriety of victim impact statements by foster parents appears to be an issue of first impression in Iowa. Foster parents are not explicitly authorized to submit victim impact statements, however they may be able do so under Iowa Code section 915.21(1)(e).

"Authority to submit impact statements is authorized under Iowa Code section 915.21 and is wholly statutory." *State v. Matheson*, 684 N.W.2d 243, 244 (Iowa 2004). Section 915.21 gives victims the right to present a victim impact statement. "Victim" is defined broadly enough to include "the immediate family members of a victim . . . who was under eighteen years of age at the time of the offense." Iowa Code § 915.10(3). The Iowa Supreme Court has clarified that "immediate family" is limited to "husband and wife or [persons] related within the second degree of consanguinity or affinity." *State v. Sumpter*, 438 N.W.2d 6, 8 (Iowa 1989); *see also State v. Lopez*, 872 N.W.2d 159, 175–76 (Iowa 2015). Because foster parents are typically not related by blood or marriage to their foster child, they are excluded by this limitation.

Yet we observe that foster parents may often be well positioned to describe the impact of a criminal act on their foster child, particularly where the foster child is too young or emotionally incapacitated to give his or her own statement. Iowa

Code section 915.21(1)(e) provides such a mechanism: "If the victim is unable to make an oral or written statement because of the victim's age, or mental, emotional, or physical incapacity, the victim's attorney or a designated representative shall have the opportunity to make a statement on behalf of the victim." As explained in *Lopez*, 872 N.W.2d at 176, the statute does not define the term "designated representative." Neither does it specify a process by which designation occurs.

In *Lopez*, the Iowa Supreme Court considered whether a guardian ad litem was the two-year-old victim's "designated representative" within the meaning of section 915.21(1)(e). 872 N.W.2d at 176. The guardian ad litem had "attended the plea hearing and sentencing hearing on her own initiative as the child-victim's [guardian ad litem] to look out for the interests of [the child]." *Id.* at 178. The Court in Lopez stated,

> We need not decide on the existing record whether Leighty was properly designated to give the child's victim-impact statement in 2014 because, as we explain below, Lopez will be resentenced in a new hearing after remand. On remand, the district court shall ensure that only a person properly designated as B.H.'s representative under section 915.21(1)(e) may give a victim-impact statement on that child's behalf.

*Id.* The court noted that no "*parent or guardian*" objected to the guardian ad litem's victim impact statement on behalf of the child. *Id.* at 178 n.5 (emphasis added). Though the legal characteristics of a relationship between a foster parent and child differ from those of legally recognized parent-child relationships and the law of guardianships, the relationship between a foster parent and child may place a foster parent in a position to speak on the child's behalf in the event the child is a victim of a crime and too young or emotionally traumatized to give a victim impact

statement. Indeed, a foster parent's relationship with their foster child is distinct from the guardian ad litem relationship at issue in *Lopez*; as C.S.'s day-to-day care provider, the foster parent in the instant case served a role much closer to "parent or guardian" than did the guardian ad litem discussed in *Lopez*.

The State points out that Iowa Code section 232.68(8) defines "[p]erson responsible for the care of a child" as a "parent, guardian, or foster parent." Although we acknowledge this provision is not directly on point, as it appears in a code division pertaining to child-in-need-of-assistance proceedings, we find the definition helpful in interpreting the meaning and import of the term "designated representative" in section 915.21(1)(e). Section 232.68(8) lends support to the notion that a foster parent can not only serve as a properly designated representative under section 915.21(1)(e) but, in some cases, even hold the power of appointment just as a "parent or guardian" would. *See Lopez*, 872 N.W.2d at 178 n.5.

However, we need not reach the issue of whether counsel breached a duty in failing to object to the foster mother's impact statement on behalf of her foster child pursuant to 915.21(1)(e). We reach this determination because we conclude Hampton cannot prove he was prejudiced by his counsel's failure to object.

With respect to the prejudice prong, we undertake a normal ineffective-assistance analysis, finding prejudice only where the defendant shows by a preponderance of the evidence that "a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Ondayog*, 722 N.W.2d 778, 784–85 (Iowa 2006) (evaluating whether a defendant was prejudiced by his counsel's conduct during a jury trial).

Hampton argues that the foster mother's victim impact statement led the court to sentence Hampton to consecutive, instead of concurrent, sentences. He further argues that the foster mother's complaint was an attack on his constitutional right to a trial and that by not explicitly rejecting the victim impact statement, the court erroneously relied on it. We reject Hampton's argument that by entertaining the victim impact statement the court relied on an improper sentencing consideration. The record does not reflect that the district court relied on the foster mother's complaint that Hampton sought a trial, and the statement provided no information that was not presented at trial.

In her statement, the foster mother argued for a longer period of incarceration in part because Hampton had proceeded to trial, saying, "Instead of you taking responsibility for your sick actions, [C.S.] had to deal with the emotional trauma of relaying the details of the abuse to various lawyers, providers and other adults to prove that you hurt her." She also spoke to the confusion and trauma C.S. suffered more generally.

The evidence at trial established that C.S. was nine years old at the time of the offenses. She was living with her foster mother at the time of trial, who was responsible for C.S.'s day-to-day care. C.S. was sexually abused multiple times and developed chlamydia. A mental health therapist testified to the child's diagnosis of post-traumatic stress disorder. The trial court sustained a motion for special accommodations that allowed C.S. to testify via closed-circuit television so as to be separated from Hampton at both her deposition and at trial. As the father of C.S.'s youngest brother and the boyfriend of C.S.'s biological mother, Hampton occupied a position of ostensible trust in relation to C.S.

In imposing sentence, the court recited "the trauma to [C.S.]" as a factor and included in the sentencing order as a reason for the sentence the "impact on the victim(s) in this case." These are the only pieces of evidence Hampton relies upon to show the district court's alleged reliance on the foster mother's complaint that Hampton sought a trial. This evidence is too tenuously linked to the alleged ill to justify vacating the sentence. Copious evidence at trial demonstrated the "trauma" and "impact" C.S. suffered from the abuse, including a positive test for a sexually transmitted disease, a diagnosis of post-traumatic stress disorder, the trial court's grant of special accommodations so C.S. could avoid contact with Hampton, and C.S.'s testimony regarding the disturbing details of the abuse.

We presume "that a sentencing court does not ordinarily consider an impermissible factor." *State v. Matheson*, 684 N.W.2d 243, 244 (Iowa 2004). Additionally, we are less likely to reverse when improper evidence is introduced at sentencing before a judge rather than before a jury at trial. *See id.* In *Matheson*, the Iowa Supreme Court refused to assume a sentencing court did not consider as evidence victim impact statements given by victims of a crime the defendant committed and was convicted of in Illinois. *Id.* at 244–45. However, in that case, the evidence introduced at sentencing "told the sentencing judge . . . a good deal more than would otherwise be known." *Id.* at 245. Such is not the case here.

Instead, *State v. Sumpter* is a better guide.

> The victim impact statements . . . were hostile and bitter, and they expressed a strong desire for the ultimate retribution for their niece's death. But they told the judge little, if anything, that was not already apparent. . . . The victim impact statements . . . did not contain the prejudicial type of information which would not otherwise be available to the judge and which we have held to be prejudicial, such as

> allegations of unproven crimes or other facts outside the record.

*Sumpter*, 438 N.W.2d at 7.

Since *Sumpter* was decided, the Iowa Supreme Court has reaffirmed that where a sentencing court's statement or order makes no mention of impermissible evidence introduced through victim impact statements, the critical inquiry precedent to reversal is whether "prejudicial information such as unproven crimes or other facts outside the record" was introduced in the victim impact statement. *State v. Tesch*, 704 N.W.2d 440, 454 (Iowa 2005). No such prejudicial information was introduced here. Of the 348 words in the victim impact statement in question, only thirty-seven were devoted to the foster mother's complaint that Hampton did not accept responsibility for the abuse. Hampton identifies no information in the statement regarding unproven crimes or facts outside the record.

We therefore follow *Sumpter* and *Tesch* and presume the sentencing court did not impermissibly consider the complaint that Hampton had proceeded to trial when it imposed sentence. Under the *Sumpter* rule, we presume the sentencing court did not rely on the portion of the victim impact statement complaining over his assertion of his trial right. 438 N.W.2d at 9. Considering the remarks as a whole, we conclude this case is similar to *Sumpter*: "Any effect these victim impact statements might have had in the sentencing decision was insufficient to require vacation of the sentence." *Id.* Hampton suffered no prejudice. His ineffective-assistance-of-counsel claim fails.

## II.    Restitution Order

The Supreme Court's decision in *State v. Albright*, 925 N.W.2d 144, 162 (Iowa 2019), clarified that "[c]ourts must wait to enter a final order of restitution until all items of restitution are before the court.  Once the court has all the items of restitution before it, then and only then shall the court make an assessment as to the offender's reasonable ability to pay."  Here, the district court did not have the benefit of the procedures outlined in *Albright* when it entered its order regarding restitution.

The trial court made two orders directing Hampton to pay certain costs and fees.  First, in the August 28, 2018 sentencing order, the court ordered Hampton to pay "restitution as substantiated," "fines, penalties and surcharges that have not been suspended," "court costs in an amount to be assessed by the Clerk of Court," and "court-appointed attorney fees per Iowa Code Section 815.9."  The court found Hampton had "the reasonable ability to pay attorney fees in the total cost of legal assistance in the amount approved by the State Public Defender."  Second, on September 4, 2018, the court ordered Hampton to pay $16,860.00 in room and board charges and administrative costs of $135.18, totaling $16,995.18.

The Iowa Code creates two categories of restitution.  *Albright*, 925 N.W.2d at 159.  The first category includes restitution to victims and to the clerk of court for fines, penalties, and surcharges.  *Id.*  The second category includes restitution

> for crime victim assistance reimbursement, restitution to public agencies pursuant to section 321J.2, subsection 13, paragraph "b", court costs including correctional fees approved pursuant to section 356.7, court-appointed attorney fees ordered pursuant to section 815.9, including the expense of a public defender, when applicable, contribution to a local anticrime organization, or restitution to the medical assistance program pursuant to chapter 249A.

*Id.* (quoting Iowa Code § 910.2(1)).  "The court can only order restitution for items in this second category to the extent the offender has the reasonable ability to pay." *Id.*  Additionally, "restitution orders entered by the court prior to the final [restitution] order are not appealable as final orders or enforceable against the offender."  *Id.* at 161.  A court must not enter a final order of restitution before "all items of restitution are before the court."  *Id.* at 162.

While the court made a determination as to Hampton's ability to pay attorney fees, that order came before all items of restitution were before the court and was therefore improper.  Additionally, the court ordered Hampton to make restitution for court costs without making a reasonable ability to pay determination.  We therefore vacate the restitution part of the sentencing order and the order pertaining to the State's reimbursement claim.  The matter is remanded for determination of restitution, consistent with *Albright* and this opinion.

**Conclusion**

Hampton suffered no prejudice when his trial counsel removed a juror with a peremptory strike who might have been successfully challenged for cause or when his counsel failed to object to a foster mother's victim impact statement.  However, we vacate the portions of the sentencing court's decisions that pertain to restitution, instructing that the sentencing court should calculate restitution anew in accordance with *Albright*.

**JUDGMENT OF CONVICTIONS AFFIRMED, AND SENTENCES AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**