# In the Iowa Supreme Court

No. 24–1166

Submitted December 16, 2025—Filed January 30, 2026

**State of Iowa,**

Appellee,

vs.

**Malorie Lynn Hallock,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cerro Gordo County, Gregg R. Rosenbladt, judge.

The defendant seeks further review of a court of appeals decision affirming her sentence over her objection that the district court gave improper consideration to a victim-impact statement. **Decision of Court of Appeals Vacated; District Court Judgment Affirmed.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

Brenna Bird, Attorney General, and Joshua Henry, Assistant Attorney General, for appellee.

**Mansfield, Justice.**

### I. Introduction.

When we expect criminal defendants to accept responsibility and express remorse at sentencing, we can't fairly require them also to object if a victim's oral statement in that proceeding may have crossed a line.

In this case, the defendant pleaded guilty to first-degree theft pursuant to an agreement with the State that both parties would recommend a deferred judgment. At sentencing, the defendant's former employer delivered a lengthy and eloquent victim-impact statement about the effects of the defendant's actions on her business and her personal life. The district court chose not to follow the parties' joint recommendation and instead imposed the maximum available penalty, an indefinite prison term not to exceed ten years.

On appeal, the defendant argues that the victim-impact statement included unproven allegations that the district court should not have considered. The court of appeals, however, held that the defendant had failed to preserve error as to anything in the victim-impact statement. In the court of appeals' view, the defendant needed to raise any objections to the oral victim-impact statement at sentencing itself.

We granted further review, and we now reiterate that procedural errors at sentencing are generally *not* subject to the normal rules of error preservation and may be raised for the first time on direct appeal. An exception exists for the presentence investigation report (PSI) and other written documents that are made available to the defendant and defense counsel before sentencing, with an opportunity given to object. But that wasn't the situation here. The victim appeared in the courtroom and delivered her previously unseen statement orally. Therefore, the defendant may argue for the first time on appeal that the district

court should not have given consideration to that victim-impact statement. Nevertheless, on the merits, we hold that the victim-impact statement was overwhelmingly appropriate, that the record does not show the district court considered an improper factor in sentencing the defendant, and that the district court properly exercised its sentencing discretion. Thus, we affirm the defendant's conviction and sentence.

## II. Background Facts and Proceedings.

Defendant Malorie Hallock was employed by Studio 65 Tattoo in Clear Lake. During a nine-month period, Hallock embezzled approximately $120,000 from her employer. In November 2023, she was charged in the Cerro Gordo County District Court with theft in the first degree, a class "C" felony, in violation of Iowa Code § 714.2(1) (2023).

Ultimately, the State and Hallock entered into a plea agreement. At that time, Hallock had restored approximately $20,000 of the stolen funds. Under the agreement, Hallock pleaded guilty to the first-degree theft charge, and the parties jointly recommended a deferred judgment. The agreement also provided that as a term of probation, Hallock would repay the approximately $100,000 she still owed in increments of at least $200 per month. The parties' sentencing recommendation was not binding on the court.

Sentencing was scheduled for July 15, 2024. One week before, the probation office submitted its PSI. The PSI noted, "No victim impact statements have been received as of today's date." The PSI indicated that Hallock's criminal history included a prior 2005 conviction for fifth-degree theft. The PSI stated that Hallock was "in need of structure and guidance." It formally recommended that Hallock receive a suspended sentence and probation. However, the PSI added,

"Due to [Hallock's] limited criminal history, this officer feels the defendant would benefit from a deferred judgment if the Court feels it is appropriate."

At sentencing, Hallock's counsel was asked if she had reviewed the PSI with her client. She indicated that she had done so and offered a few updates and corrections. The district court then confirmed with Hallock's counsel that it could rely on the PSI "as modified."

Both the State and Hallock voiced support for their recommendation of a deferred judgment. Hallock was offered the opportunity to make a statement in allocution and declined to do so.

At that point, the owner of Studio 65 Tattoo, who was present in the courtroom for Hallock's sentencing, made a victim-impact statement. The business owner's statement, which takes up eleven transcript pages in the record on appeal, described in detail the effects of Hallock's embezzlement. For example:

> [W]hen she lost her job at the hospital, I was eager to provide her an opportunity as an employee enabling her to provide for her family. I didn't know that bringing a friend in was going to be something that basically almost ruined my life and led me to such a state of depression that I was hospitalized and I have $11,000 worth of hospital bills that I cannot pay that have gone to collections.

It also touched on some other subjects:

> I lost artists because of the way she very maniacally planted seeds in their head to make them believe that it was me misappropriating the funds. It was absolute chaos. . . . So it's really hard for me to hear about how she should only be able to pay this much and basically get off so easily after stealing such a tremendous amount of money when I came from nothing and have gone out of my way, above and beyond, to support others all my life, constantly placing other people before myself, including Malorie and her family.

After the owner had finished delivering her victim-impact statement, the district court asked counsel if they had anything further. Neither counsel did. The district court then pronounced sentence. After reciting the factors that it

was considering, including the PSI and the victim-impact statement, the district court observed, "I thought the victim impact statement was very thoughtful and it actually . . . talked about a number of these issues that the Court considers." The district court explained that it did not believe a deferred judgment was appropriate, referring particularly to Hallock's age and her prior theft conviction. The court pointed out that the embezzlement involved "a huge amount of money" and was "something that didn't occur just in one occurrence." Rather, it took place "over a period of time and . . . in a number of smaller transactions . . . that totalled more than a hundred thousand dollars." The court also declined to order a suspended sentence and probation. Instead, it sentenced Hallock to an indefinite term of imprisonment not to exceed ten years.

Hallock appealed. She argued that the district court abused its sentencing discretion in sending her to prison despite the parties' joint recommendation, her almost complete lack of criminal history, her acceptance of responsibility, and her having worked out a restitution plan. In addition, Hallock maintained that the district court relied on improper factors in sentencing her because the victim-impact statement contained unproven allegations. We transferred the case to the court of appeals.

The court of appeals affirmed. It held that the district court did not abuse its sentencing discretion because it was not bound by the parties' sentencing recommendation. As for the claim that the district court had improperly considered unproven allegations in the victim-impact statement, the court of appeals rejected that argument for two reasons. First, it concluded that Hallock had failed to preserve error: "As challenges to a victim impact statement are challenges to the sentencing procedure rather than the legality of the sentence, a defendant is required to object to the statement to preserve error. *State v.*

*Voshell*, 12 N.W.3d 1, 3 (Iowa Ct. App. 2024)." Second, it questioned whether the owner's statement actually contained *unproven* allegations about Hallock—as contrasted with statements about how Hallock's *admitted* embezzlement had impacted the owner's life. And it went on to conclude that there was nothing in the record to indicate that the district court had considered any improper remarks contained in the victim-impact statement when it sentenced Hallock.

One member of the panel specially concurred because she disagreed with the panel majority on the issue of error preservation. She maintained that error preservation does not require the defendant at sentencing to "jump up and object during the victim's delivery of their oral impact statement." She would have rejected Hallock's improper-factors argument solely on the merits.

Hallock applied for further review, and we granted her application.

### III. Standard of Review.

"A sentencing court's decision to impose a specific sentence that falls within the statutory limits 'is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters.' " *State v. Pirie,* 18 N.W.3d 238, 249 (Iowa 2025) (quoting *State v. Schooley*, 13 N.W.3d 608, 616 (Iowa 2024)). "[A] sentencing court abuses its discretion when it relies on improper factors to reach a sentence." *Schooley*, 13 N.W.3d at 616. "A defendant must affirmatively show that the sentencing court relied on improper evidence to overcome this presumption of validity." *State v. Wickes*, 910 N.W.2d 554, 572 (Iowa 2018).

### IV. Legal Analysis.

We have decided to consider Hallock's arguments in inverse order. We will start with Hallock's improper-factors argument and specifically the matter of error preservation.

**A. Error Preservation.** Recognizing that error preservation at sentencing differs from error preservation in other areas, we recently tried to bring clarity to the subject in *State v. Chawech*, 15 N.W.3d 78 (Iowa 2024). In *Chawech,* the defendant appealed a mandatory minimum sentence that had been imposed under Iowa Code section 902.7 on the ground that this enhancement had not been adequately charged in the trial information. *Id.* at 82. The state argued, and the court of appeals agreed, that the defendant's challenge was barred on error preservation grounds. *Id.*

We took the opportunity in *Chawech* to discuss sentencing error preservation in some depth. *Id.* at 83–87. We noted that "sentencing challenges are often excepted from our error preservation requirements." *Id.* at 84. We pointed out that "[t]he first category of excepted challenges has sometimes been called 'procedurally defective sentences.' " *Id.* This category includes "claims that the court abused its discretion through its choice of sentence or through the reasons it gave for that choice," "claims that the court failed to consider certain matters," and "claims that the court relied on an improper consideration." *Id.*

We then noted that illegal sentences are also excepted from normal rules of error preservation. *Id.* at 85. "An illegal sentence is a sentence that could not have been lawfully imposed for the defendant's conviction or convictions." *Id.* (quoting Iowa R. Crim. P. 2.24(5)(*b*)).

We also emphasized that there is a difference between the first and second categories of exceptions. *Id.* Illegal sentences "may be corrected at *any* time," even on collateral review. *Id.* But "[t]he same is not true of procedural-defect challenges, which must be raised through a timely appeal." *Id.* In the end, we concluded that the defendant's challenge in *Chawech* was "an illegal-sentence

challenge" and that error preservation was not required, although we went on to reject that challenge on the merits. *Id.* at 87–89.

*Chawech* didn't make new law. Our opinion there cited to many of our sentencing error preservation precedents. *See id.* at 84–85. And underlying that law are some practical considerations.

For example, we noted in *Chawech* that there is at least one important exception to the first exception. *Id.* at 85. Objections to the PSI must be raised at the time of sentencing. *Id.* "[I]f the defendant fails to object to alleged defects in the presentence investigative report prior to the entry of sentence, the defendant will not be allowed to attack the sentence based on those defects." *Id.*

Iowa law provides that "[t]he defendant's attorney . . . shall have access to the presentence investigation report at least three days prior to the date set for sentencing." Iowa Code § 901.4. This gives the attorney an opportunity to review the PSI with their client and to be prepared to state their objections and corrections to the PSI at or before the time of sentencing. So it is fair to require the defendant to preserve error on matters in the PSI.

*State v. Schooley* illustrates the significance of this point. 13 N.W.3d 608. There the probation office filed a guardian ad litem's (GAL) victim-impact statement as a supplemental addendum to the PSI the day before sentencing. *Id.* at 617. On appeal, the defendant sought to argue for the first time that the GAL lacked authority under Iowa Code section 915.21 to make a victim-impact statement. *Id.* We declined to consider this argument on error preservation grounds for the following reasons:

> When the district court asked Schooley's counsel if she and Schooley had an opportunity to review the PSI "and addendum," counsel responded affirmatively. Notably, Schooley's counsel proposed corrections to the PSI concerning Schooley's financial history, marital relationship, and living arrangements—but did not

> challenge the GAL's authority to provide the report filed as an addendum. Nor was this authority challenged later in the sentencing hearing when the GAL's statement was read verbatim.
>
> Under the circumstances of this case, Schooley failed to preserve the issue of whether the GAL was authorized by Iowa Code section 915.21 to provide a victim-impact statement on A.S.'s behalf. *See* [*State v.*] *Grandberry*, 619 N.W.2d [399,] 402 [(Iowa 2000) (en banc)] (explaining that, at sentencing, a district court is free to consider portions of PSIs that are not contested by a defendant).

*Id.* at 618.

On the other hand, we have observed that it is "exceedingly unfair to urge that a defendant, on the threshold of being sentenced, must question the court's exercise of discretion or forever waive the right to assign the error on appeal." *State v. Cooley*, 587 N.W.2d 752, 754 (Iowa 1998). Thus, we do not require a defendant to tell the sentencing judge in real time that they are considering an improper factor or failing to give adequate reasons for the sentence chosen. *Chawech*, 15 N.W.3d at 84.

The same rationale applies when a victim appears at sentencing and, for the first time, provides a victim-impact statement. Unlike with the PSI, the defendant and defense counsel have not had a preview of the previously undisclosed statement or the opportunity to consult with each other about it. It strikes us as "exceedingly unfair" to require the defendant to object to the statement as it is being made.

Sentencing—particularly following a guilty plea—is a proceeding in which the district court expects the defendant to assume responsibility and demonstrate insight into their conduct and how it affected any victims. That expectation makes it unrealistic to demand that, in the same breath, a defendant pivot into adversarial mode to dispute the contents or relevance of a victim-impact statement. Doing so would risk signaling defiance rather than contrition,

even when the objection rests on a sound legal basis. The result is a genuine lose-lose choice: object and jeopardize the very considerations that matter most at sentencing, or remain silent and forfeit appellate review.

Moreover, a rule requiring contemporaneous objection to previously undisclosed victim-impact statements at sentencing is unfair to *victims*. It is often a difficult and courageous undertaking for victims to exercise their right to appear at sentencing and provide an oral statement. They should be able to deliver their statement free of objections from the defendant if possible.

Finally, a contemporaneous-objection rule is largely unnecessary. We will not reverse based on an improper victim-impact statement unless there is a clear indication in the record that the district court relied on the improper material in sentencing. "We trust that sentencing courts will 'filter out' any improper or irrelevant material in victim-impact statements absent clear evidence to the contrary." *State v. Canady*, 4 N.W.3d 661, 675–76 (Iowa 2024) (quoting *State v. Sailer*, 587 N.W.2d 756, 764 (Iowa 1998)); *see also Schooley*, 13 N.W.3d at 612 ("We require an affirmative showing that the district court relied on improper evidence introduced through an unchallenged victim-impact statement before we will infer that the district court failed to properly exercise its discretion in filtering out any improper statements."); *State v. Sumpter*, 438 N.W.2d 6, 9 (Iowa 1989) (declining to order resentencing in a second degree murder case where the aunt and uncle of the decedent were improperly allowed to make victim-impact statements when the statements "did not contain the prejudicial type of information which would not otherwise be available to the judge . . . , such as allegations of unproven crimes or other facts outside the record"). Requiring defendants to enumerate their objections to victim-impact statements may needlessly complicate and prolong sentencing hearings, given

that sentencing judges are generally capable of sorting through those matters on their own.

For all these reasons, we hold that a defendant need not object to a victim-impact statement that is presented for the first time at sentencing. We do not agree with the court of appeals' observation that "challenges to the sentencing procedure rather than the legality of the sentence" must generally be raised at sentencing; *Chawech* is to the contrary.

At the same time, we reaffirm what we decided in *Schooley*, that a victim-impact statement that becomes part of the PSI is subject to the error preservation rules for PSIs. 13 N.W.3d at 618. And we do not disagree with the outcome in *State v. Voshell* on its facts. 12 N.W.3d at 4. There, the victim-impact statement was filed with the district court in advance of sentencing and defense counsel was given an opportunity to review it with his client and object to it. *Id.* at 2. In the words of the court of appeals: "[The defendant] had the opportunity to object earlier in the hearing when the court asked his attorney whether they had reviewed the victim impact statement—and rather than object, [the defendant's] counsel confirmed he and his client had reviewed the statement." *Id.* at 4; *see also Pirie*, 18 N.W.3d at 248–49 (finding that the defendant had an obligation to object in the district court to a remote sentencing proceeding given that "the parties must have discussed holding the hearing remotely" in advance).

**B. Improper Factors in Sentencing?** Having concluded that the defendant may challenge on appeal the district court's consideration of the victim-impact statement, we turn to whether this resulted in a sentencing based on improper factors. Like all three members of the court of appeals panel, we conclude that it did not.

We are at a disadvantage because we are reading an inanimate transcript. Still, we share the district court's view that the owner's victim-impact statement was "very thoughtful" and "talked about a number of these issues that the Court considers [in sentencing]," including "[r]ehabilitation" and "protection of the community from offenses." For instance, the owner spoke about the financial impact of the embezzlement on her:

> I had to empty my savings account that I had put away money for my children's college. They have zero college funds and my daughter is 17 years old getting ready to go to college. No money for college left because I had to empty everything I had to put back into the business so my business could stay afloat.

She also referred to the potential reverberations in the community if Hallock received only a deferred judgment:

> And it's confusing to see and know that people are watching this case. They see such a huge amount and when you read about amounts like this being stolen, there's no way someone doesn't end up with a felony. There's no way that after five years of probation it's no longer on their record. What does that do in the future for other businesses who might hire someone like that?

In addition, the owner discussed the circumstances of the crime and the possibility of Hallock reoffending:

> But that's been a repetitive, month after month offending in one place against someone who was her friend. So what would she do out in the workforce being around money where that person isn't her friend?

Despite this, the owner expressed repeatedly that she bore no ill will toward Hallock and wanted her only to get help to turn her life around.

Of course, like many victim-impact statements, this one was not without its imperfections. Victim statements are delivered by human beings, not legal automatons. Here, the owner referred to some alleged misconduct by Hallock that was outside the scope of the crime charged to which Hallock pleaded guilty.

But the references were a relatively small part of a lengthy, appropriate, and heartfelt statement, and there is no indication that the district court relied on them.

"The court's explanation is complete in itself and does not mention an improper factor." *Canady*, 4 N.W.3d at 675. While it is a "well-established rule that a sentencing court may not rely upon additional, unproven, and unprosecuted charges," the transcript contains no indication that the district court considered any charges or facts beyond the charge that Hallock pleaded guilty to. *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002). "We will not draw an inference of improper sentencing considerations which are not apparent from the record." *Id.* Again, "[w]e trust that sentencing courts will 'filter out' any improper or irrelevant material in victim-impact statements absent clear evidence to the contrary." *Canady*, 4 N.W.3d at 675–76 (quoting *Sailer*, 587 N.W.2d at 764).

**C. Exercise of Sentencing Discretion.** Finally, Hallock argues that the district court abused its discretion in sentencing her to prison. She notes that the parties (and to some extent the PSI) recommended a deferred judgment, that she had minimal criminal history, and that she had accepted responsibility and entered into a restitution plan.

The parties' sentencing recommendation was not binding on the court. In sentencing Hallock to prison, the district court made note of the facts that Hallock was forty years old and therefore had "some life experiences," that she had a prior conviction for theft, and that the present theft involved a "huge

amount of money" and took place "over a period of time."[1] These are valid considerations. We see no abuse of discretion.

### V. Conclusion.

For the reasons stated, we vacate the decision of the court of appeals and affirm Hallock's conviction and sentence.

**Decision of Court of Appeals Vacated; District Court Judgment Affirmed.**

---

[1]The amount stolen was more than ten times the threshold minimum for first-degree theft. *See* Iowa Code § 714.2(1).